Irene Elapuck **TURNER**, Appellant,

v.

May **PANNICK**, Appellee.

No. 2293.

Supreme Court of Alaska.

Sept. 25, 1975.

E. John Athens, Jr., Alaska Legal Services, Fairbanks, for appellant.

Robert B. Downes, Hodges & Assoc., Fairbanks, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR and BOOCHEVER, Justices, and DIMOND, Justice Pro Tem.

## OPINION

CONNOR, Justice.

This is an appeal from a judgment denying appellant's petition to obtain custody of her child Roberta from appellee.

Irene Turner filed a petition for a writ of habeas corpus in order to obtain custody of her two-year old daughter from appellant's sister, May Pannick. An order to show cause in the matter was entered and a hearing was held pursuant to the order. After both parties and their witnesses had given testimony, findings of fact and conclusions of law were made and judgment was entered against appellant.

Both sides agree that at the time the complaint was filed, appellant was 27 years old, divorced, pregnant and the mother of two children, Charles who was six years old and Roberta who was two years old.

Turner who currently lives in an apartment in Fairbanks with her son and an 18-year old unemployed roommate, receives $200 per month in welfare benefits. During the past year, appellant also received approximately $1000 under the Alaska Native Land Claims Settlement Act. Turner, who receives no child support from her former husband, is occasionally employed as a babysitter. Appellant testified that she and her mother cared for Roberta with help from appellee.

At the time of the hearing, Pannick was a 28-year old, unmarried woman employed as a civil service worker at Fort Wainwright. She lived in a house next to her parents' house and, prior to that, had lived at Fort Wainwright in base housing for four years. Although children were not permitted in base housing, Roberta often stayed with her during weekends and holidays.

In February 1972 Turner executed a power of attorney giving Pannick authority to care for Roberta. According to Turner, this power of attorney was executed in order to insure that Roberta would be cared for should anything happen to her while appellant was away.

Beginning in the spring of 1973 and continuing for the next six months, Turner lived in an apartment and trailer in Fairbanks with a man who is the father of her third child. Appellant's son, Charles, lived with her at these places, but her daughter remained at her parents' house. Turner frequently visited her daughter at her parents' house, and Roberta would spend some days and nights at the apartment and trailer. Turner testified that she always made certain that Roberta was cared for, and that she sometimes helped care for her during the day. According to appellant, her family enjoyed caring for Roberta and the child received a great deal of love and attention.

In October 1973 Turner moved back into the small house next to her parents' house and extensively remodeled the interior in order that she, Charles and Roberta could live there together. Appellant was forced to vacate the house because of a dispute with appellee. Turner then moved into the apartment in which she presently resides with her son.

Both sides presented conflicting testimony with respect to whether or not Turner gave Roberta to Pannick. Appellee and her witnesses testified that appellant gave Roberta to her and that she had taken care of and raised Roberta, with some help from her parents, ever since about the time Roberta was born.

The superior court denied Turner's petition to obtain custody of her child, Roberta, without making a finding that appellant was unfit or had abandoned Roberta. The court concluded that award of custody to Pannick was in the child's best interest.

In deciding this appeal, we must resolve the following issues:

1. Was it error for the lower court to deny appellant's petition where the court

made no finding that appellant was unfit or had abandoned her child?

2. Did the lower court err in applying the best interests of the child test rather than making a determination as to whether the welfare of the child required her to be placed in the custody of a non-parent?

Turner argues that the burden of proof rested with appellee to prove appellant's unfitness, or that the welfare of the child required appellant's petition to be denied, or that appellant had abandoned her child. According to appellant, the burden of proof rested with appellee because of the nature of the proceeding [1] and because of the presumption that parents are fit to have custody of their children.[2] In addition, Turner notes that in Alaska preference is given to parents in a custody dispute with a non-parent.

In *Wilson v. Mitchell*, 406 P.2d 4, 7 (Alaska 1965), we held that

"[The] parent is entitled to a preference over the grandparents, unless it is clearly shown that the parent is unfit for the trust, or that the welfare of the child requires it to be in the custody of the grandparents."

In so holding we reaffirmed our earlier decision in *Hickey v. Bell*, 391 P.2d 447 (Alaska 1964).

In *Bass v. Bass*, 437 P.2d 324 (Alaska 1968), while specifically approving our holding in *Wilson v. Mitchell, supra,* we found in favor of the grandparents because the record presented evidence of the mother's emotional immaturity, her general neglect of the child's health, and her overall lack of interest in bringing up the child.

Appellant argues that, in light of *Wilson* and *Bass*, proof of a parent's unfitness is necessary before that parent can be deprived of his child.

Appellee responds by arguing that *Wilson* sets forth two requirements, fulfillment of either of which will justify a lower court's decision to award custody to a non-parent despite the preference normally given to a natural parent. The tests are that the non-parent clearly shows that the parent is unfit or that the welfare of the child requires it to be in the custody of the non-parents. Pannick concludes that the superior court correctly relied on the second test and, therefore, need not have found that Turner was unfit or had abandoned her child.

The superior court, however, did not find that the welfare of the child required her to be in the custody of the non-parent but concluded that it was not in the best interests of the child to grant the petition. The application of the best interests standard is not in accordance with our decision in *Wilson v. Mitchell, supra.*

A review of pertinent Alaska cases reveals a certain ambiguity with respect to the test applicable to suits by a biological parent to regain custody of his child from some third party.

*Wilson v. Mitchell,* supra, at 7 requires that, in order for custody to be awarded to a non-parent, the parent must be deemed unfit or the welfare of the child must de-

---

1. The nature of the proceeding was governed by Civil Rule 86(?) which requires that an order to show cause be issued upon the filing of a complaint.

Civil Rule 86(*l*) provides:

"An order to show cause, and not a writ of habeas corpus, shall be issued initially if the action is brought by a parent, foster parent, or other relative of the child, to obtain custody of the child under the age of sixteen years from a parent, foster parent, or other relative of the child, the Commissioner of Health and Welfare, or any other person."

The order to show cause was issued and Pannick was ordered to appear before the court and show cause why a writ of habeas corpus should not issue for appellant to obtain custody of her child.

2. *Reynardus v. Garcia*, 437 S.W.2d 740, 743 (Ky.1968); *B. v. L.*, 75 Misc.2d 576, 348 N.Y.S.2d 21 (1973); *In re Spencer*, 74 Misc. 2d 557, 346 N.Y.S.2d 645 (1973).

mand that custody remain with the non-parent, at least until further proceedings are held.

In *Hickey v. Bell,* 391 P.2d 447, 448 (Alaska 1964), we held that:

"The trial court properly applied the majority view which is that as between parents and grandparents adversely claiming custody of a child, either parent is entitled to a preference over the grandparents, unless it is clearly shown that the parent is unfit for the trust, or that the welfare of the child requires it to be in the custody of the grandparents." (footnote omitted)

On the other hand, in *Bass v. Bass,* 437 P.2d 324, 325 (Alaska 1968), we reaffirmed our conclusion in *Rhodes v. Rhodes,* 370 P.2d 902, 903 (Alaska 1962) that:

"In determining the custody of children the trial court should be guided by the rule of quite general application that the welfare and the best interests of the children should be given paramount consideration." (footnote omitted)

However, in reaching our decision in *Bass* we also relied on the following language in *Wilson v. Mitchell,* supra, at 7:

"[The] parent is entitled to a preference over the grandparents, unless it is clearly shown that the parent is unfit for the trust, or that the welfare of the child requires it to be in the custody of the grandparents." (footnote omitted)

Moreover, we note that *Rhodes* involved a custody dispute between two parents while *Bass* and *Wilson* involved a dispute between a natural parent and a non-parent.

Thus, since the case law is not dispositive, we must now determine the standard applicable to custody disputes arising between natural parents and some third party.

In order to satisfy the "welfare of the child" requirement, the non-parent must show that it clearly would be detrimental to the child to permit the parent to have custody. On the other hand, under the "best interests" test, the court is free to consider a number of factors including the moral fitness of the two parties; the home environments offered by the parties; the emotional ties to the parties by the child; the emotional ties to the child by the parties; the age, sex or health of the child; the desirability of continuing an existing child-third party relationship; and the preference of the child.[3]

The California supreme court, in *In re B.G.,* 114 Cal.Rptr. 444, 523 P.2d 244 (1974), recognized the danger of giving courts the power to award custody of children to persons other than a parent solely on the grounds of best interests. If "best interest" of the child is the only criterion, then a judge may take children from their parents because the judge personally disagrees with the parents' limited means. The California court felt that the legislature, by passing a statute requiring the court to find that an award of custody to the parent would be detrimental to the child in a dispute between a parent and a non-parent, evidenced its desire to avoid the situation outlined above and exemplified in *Painter v. Bannister* (1966), 258 Iowa 1390, 140 N.W.2d 152, cert. denied, 385 U.S. 949, 87 S.Ct. 317, 17 L.Ed.2d 227.

---

3. Comment, "Alternatives to 'Parental Right' in Child Custody Disputes Involving Third Parties," 73 Yale L.J. 151, 153 (1963). We are aware that the author of this article concluded that:

"[W]hether as a result of these feelings or because of a sympathy for parental emotions, most courts applying the best interest test to third party situations utilize a variety of procedural devices which increase the probability of the natural parent winning the suit. In effect, the courts seem to

have created a continuum from a neutral determination of the best interest of the child to a disguised application of the parental right doctrine."

However, since Alaska law on this point is unsettled, we see no reason to adopt both the "welfare of the child" and "best interests" test when it is quite possible that the lower courts will administer the "best interests" test in a way that makes it indistinguishable from the "welfare of the child" test.

In *Painter* an Iowa court awarded custody to the minor's grandparents because it disapproved of the Bohemian lifestyle of the photographer father, despite evidence of the father's care and concern for the child. The Iowa court reasoned that the grandparents' home provided "a stable, conventional, middle-class, middlewest background." 140 N.W.2d at 154.

The California legislature, on the other hand, considered parental custody to be preferable and only to be refused where clearly detrimental to the child. We agree. Unless the superior court determines that a parent is unfit, has abandoned the child, or that the welfare of the child requires that a non-parent receive custody, the parent must be awarded custody.[4]

We have reviewed the entire record and have concluded that Pannick did not meet her burden of proving that Turner was unfit or had abandoned her child or that the child's welfare required that Pannick be awarded custody. Therefore, we reverse the superior court's judgment and order that appellant be given custody of Roberta.

Reversed.

RABINOWITZ, C. J., and DIMOND, J. pro tem., concur separately.

ERWIN, J., not participating.

DIMOND, Justice Pro Tem. (concurring).

The court holds that where there is a dispute over custody of a child between a parent and non-parent, the parent must be awarded custody unless the superior court determines that the parent is unfit, has abandoned the child or that the welfare of the child requires that the non-parent receive custody. The court also holds that in order to satisfy the "welfare of the child" requirement, the non-parent must show that it clearly would be detrimental to the child to permit the parent to have custody.

The court draws a distinction between the "welfare of the child" requirement and the test of what might serve the child's "best interests". If there is a distinction between the two concepts, it is not difficult to conceive of a situation where a parent's custody would not be detrimental to the child, but where the child's "best interests", whatever that term connotes, would be better served by placing custody in the non-parent. This seems to create a dichotomy between "welfare" and "best interests" which is not easy to comprehend.

I believe the basic concept that governs this case is the fundamental natural right of parents to nurture and direct the destiny of their children. This is a truth which one discovers by reason, and has the status of knowledge rather than mere opinion. Nature has instilled in man a love for his children; an intimate bond, by nature, exists between parent and child.[1] It would be repugnant to the natural law to deprive a parent of the right to rear his children, except for the most grave reasons.[2] The family is one of the oldest institutions known to mankind[3] and forms the basic

---

4. Abandonment of a child has often been held to be sufficient ground for denying a parent custody of his child. In *D. M. v. State*, 515 P.2d 1234, 1237 (Alaska 1973), we defined what constitutes sufficient abandonment to deprive a mother of custody of her child:
"A better definition of abandonment, for these purposes, is that abandonment consists of conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship."
See also *In re Adoption of A.J.N.*, 525 P.2d 520, 523 (Alaska 1974) and *Adoption of V.M.C.*, 528 P.2d 788, 793 (Alaska 1974), in which we held that the "best interests" test cannot be used to deprive a parent of custody.

1. Bodenheimer, Jurisprudence, 188 (1967).

2. *See People v. Shepsky*, 305 N.Y. 465, 113 N.E.2d 801, 803–04 (1953); *State of Utah, in the Interest of L.J.J., et al., minor children*, 11 Utah 2d 393, 360 P.2d 486, 488 (1961); *Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1045 (1923).

3. Bodenheimer, Jurisprudence, 138 (1967).

unit of our society. The family should enjoy considerable autonomy and independence from state interference.[4]

If the rule were otherwise, we would be taking a step toward a totalitarian government. Children could be removed from their parents' custody at the will of the state, depending upon what some governmental petty tyrant decides is meant by the term "welfare" or "best interests" of the children. Such a state of affairs would be entirely contrary to the form of government envisioned by the founding fathers of our nation.

I agree with the court's conclusion that in order to satisfy the "welfare of the child" requirement, the non-parent must show that it clearly would be detrimental to the child to permit the parent to have custody. I concur with the court's determination to place custody of ' the child, Roberta, in her mother.

RABINOWITZ, Chief Justice (concurring).

I join in Justice Dimond's concurrence to the extent he expresses dissatisfaction with the court's attempt to draw a distinction between the administration of "welfare of the child" and "best interests" tests in custody disputes between natural parents and third parties. This court's own prior precedents have employed the two tests interchangeably.[1] Since I am of the opinion that there should be no functional differentiation in their application, I view today's opinion as creating an unfortunate and unnecessary cleavage between the two. For it should be apparent that many complex factors must, of necessity, be weighed and analyzed by Alaska's trial courts in attempting to reach just resolutions of custody disputes.[2] Analysis of such factors re-

ceives little assistance through focusing on labels as opposed to articulation of meaningful criteria.

I concur in all other aspects of the court's opinion.

---

4. *Id.*

1. *Bass v. Bass*, 437 P.2d 324, 325 (Alaska 1968) ; *Rhodes v. Rhodes*, 370 P.2d 902, 903 (Alaska 1962).

2. *See* Comments "Alternatives to 'Parental Right' in Child Custody Disputes Involving Third Parties," 73 Yale L.J. 151, 157–59 (1963).