**Gale J. BRITT, Appellant,**

v.

**William L. BRITT, Appellee.**

No. 2957.

Supreme Court of Alaska.

Aug. 12, 1977.

Patrick E. Murphy and Paul A. Barrett of Johnson, Christenson, Shamberg & Glass, Valdez, for appellant.

Suzanne C. Pestinger of Birch, Horton, Bittner & Monroe, Anchorage for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

CONNOR, Justice.

This is an appeal by a mother from an order of the superior court placing custody of her daughter with the child's paternal grandparents.

William L. Britt and Gale Joan Davidson Britt were divorced in Valdez on October 13, 1975, after a short marriage. They had one child, Jessica Lee Britt, born March 4, 1975, when Mrs. Britt was 16 years old. They executed a property and custody agreement which, among other things, placed permanent custody of Jessica with William's parents, James H. Britt, Sr. and Wilma I. Britt. At the divorce hearing before an acting district court judge sitting as a court master, no testimony was presented; counsel merely recited the terms of the agreement. The judge granted the divorce and awarded custody in accordance with the agreement.

He then made a sua sponte order that the custody question be placed on the calendar six months later "to see if there's been any changes in the status of either parent or the grandparents." He did this, he said, "be-

cause of the age of this child and the fact that neither the mother nor the father is being given custody." This order was incorporated in the decree of divorce signed by Judge James K. Singleton.

The subsequent hearing was held before Judge Victor D. Carlson in Valdez on April 6, 1976. Gale's counsel at the outset of the hearing expressed the belief that all previous orders were temporary and that this hearing was to make the initial permanent custody award. Her counsel asked that custody be awarded to Gale. William's counsel, on the other hand, felt that the April 1976 hearing was a modification proceeding. Both the grandmother and William, the natural father, testified that they wished permanent custody to be given to the grandparents until Jessica reached majority.

A detailed recitation of the facts adduced at the April 1976 hearing would serve no useful purpose.[1] Suffice it to say that at the conclusion of the hearing, the court purported to apply the standard of *Turner v. Pannick,* 540 P.2d 1051, 1055 (Alaska 1975), and concluded that neither parent was fit to have custody. The court continued physical and legal custody with the paternal grandparents, with "liberal and reasonable" visitation by both parents. Gale, the mother, has appealed the decision.[2]

1. In the words of the Oregon Court of Appeals: "There are several reasons, advanced with increasing frequency, for not publishing detailed opinions in all cases. We are here concerned with only one such reason—that in certain cases a detailed opinion has a potential for harm to persons involved which may outweigh the theoretical advantages. We think many child custody cases fall in this category, particularly since they are cases which by their very nature are determined primarily on factual rather than legal grounds. The incidents which give rise to child custody litigation are never pleasant, and often sordid. Such litigation tends to emphasize human weaknesses. While the published opinion of an appellate court in a custody case is rarely a 'best seller,' it is nevertheless a public record which can in later years come to the attention of the children who were the subject of the controversy."

*Sarty v. Forney,* 12 Or.App. 251, 506 P.2d 535, 536 (1973). The effects of child custody litigation on children and parents are severe enough without unnecessarily spreading unpleasant details on the permanent, published record. *See Veazey v. Veazey,* 560 P.2d 382, 386 (Alaska 1977), and authorities cited. *See also* Wadlington, Portrait of the Judge as Popular Author: An Appeal for Anonymity and Restraint in Domestic Relations Opinions, 1 (no. 4) Fam.L.Q. 77 (1967). Our comments are not to be construed as implying that there was highly detrimental evidence with reference to the parties involved in this appeal.

2. The cases concerning termination of parental rights, on which Gale relies, are not apposite. A termination, under AS 20.15.180, cuts off all relationships between parent and child. Therefore, the burden on the party seeking termination is higher than the burden in other custody

In *Turner v. Pannick, supra,* we held that in custody litigation between a parent and a non-parent, the parent is to be preferred unless parental custody would be "clearly detrimental to the child." The burden of proving this detriment, by a preponderance of the evidence, is on the non-parent. 540 P.2d at 1055. *See also id.* at 1055–56 (Dimond, J., concurring).

Although the trial judge at the April 1976 hearing indicated that he was applying the *Turner* standard, at the beginning of the hearing he analogized the proceeding to an eminent domain case in which the goal is the valuation of the property and neither party bears a burden of proof per se.

Even if the eminent domain analogy might be an appropriate one in custody litigation between parents, in which custody is awarded according to the best interests of the child (AS 09.55.205), it is not consistent with the standards applied in custody litigation between a parent and a non-parent. *Turner* makes clear that in such cases the non-parent must overcome by a preponderance of the evidence the preference for parental custody. Therefore, we must reverse the judgment and remand the case for further proceedings in conformance with the *Turner* burden of proof.

William argues in defense of the trial court's decision that the April 1976 hearing was a modification hearing, rather than a de novo proceeding. If it were a modification hearing, he asserts, Gale, as the party seeking modification, would bear the burden of proof. *See Nichols v. Nichols,* 516 P.2d 732, 735–37 (Alaska 1973); *Forde v. Sommers,* 373 A.2d 358 (N.H.1977).

The record is far from clear concerning whether the October 1975 order should be considered temporary, which would make the April 1976 hearing a de novo one, or

permanent, which would make the April 1976 hearing one for modification. Both parties, by their written property and custody agreement, apparently intended it to be permanent. It was the judge who suggested that the six-month review be incorporated into the final judgment.

All custody awards are subject to motions for modification, but here the court indicated a desire to review the initial decision in six months without the necessity of any such motion. We conclude that the October 1975 order is better classified as "temporary" since, by its terms, it was subject to review.

The grandparents were awarded custody in October 1975 not in an adversary proceeding, using the *Turner* standard, but with the consent of all parties. Between then and the April 1976 hearing, Gale changed her mind and decided she wished custody for herself. She asserted that during that six-month period her life became more settled and she became a better mother. The grandparents for the first time in April 1976 were contesting custody against a parent who wanted to keep her child. In those circumstances, *Turner* states, the grandparents must bear the burden of convincing the court that it would be "clearly detrimental" to the child to place her with her mother.

There is also another reason why we reverse and remand in this case. The trial court's finding that Gale Britt was an unfit parent (or, in the terms of the *Turner* opinion, that placing custody with her would be clearly detrimental to the child) is clearly erroneous in light of the evidence presented at the hearing.

The facts on which the trial court relied—her youth, her pregnancy and remarriage shortly after her divorce from

litigation. *See* AS 47.10.080(c)(3)(D); *In re E.J. (T.),* 557 P.2d 1128, 1133 (Alaska 1976). While Gale was denied custody by the superior court's order, she was granted "liberal and reasonable" visitation, permitting her to maintain a continuing relationship with her daughter. The fact that Gale now lives in Texas, at a great distance from her daughter in Alaska,

will presumably make her visits rare. But this does not mean that her parental rights are being terminated. *See, e.g., Layman v. DeHart,* 560 P.2d 1206 (Alaska 1977) (custody litigation between parents; one in Ohio, other in Alaska; ordinary custody standard, not termination standard, used).

William Britt, and the several moves she and her husband made—are unquestionably relevant to the determination of detriment to the child. But, even taken together, they fall far short of the showing which must be made under *Turner v. Pannick.* Where custody is being contested between a parent and a non-parent, it is not enough that this evidence may support the conclusion that the non-parent would provide a better environment for the child. And recently in *Horutz v. Horutz,* 560 P.2d 397, 401 & nn. 15 & 16 (Alaska 1977), we reaffirmed the rule that in any custody case evidence of the lifestyle, habits, or character of a custody claimant is relevant only to the extent that it may be shown to affect the person's relationship to the child.

Arrayed against the facts the trial court relied on were the opinions of the witnesses who testified. William, his mother, and his sister-in-law all were asked if they felt that Gale was an adequate parent, and all of them responded that they did. There is no indication that the trial court gave any weight to these opinions. We believe that the failure to do so was error. All these opinions came from witnesses related to the adverse party, not to Gale, and all were based on first-hand observation of Gale's interaction with her daughter.

Therefore, we reverse the judgment appealed from, and remand this matter to the superior court for a new hearing to be conducted according to the standards set forth in *Turner* and this opinion.

REVERSED AND REMANDED.