**Anna Emma MATSON, Appellant,**

v.

**Henry MATSON, Appellee.**

**No. 5302.**

Supreme Court of Alaska.

Jan. 29, 1982.

Edward L. Garnett, Kenai, for appellant.

James F. Vollintine, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

MATTHEWS, Justice.

This case involves a custody dispute over a seven year-old child, Shannon D. Matson. The general issue is the propriety of the trial court's order rejecting the special mas-

ter's findings of fact and conclusions of law and awarding custody to the child's father.

Mr. and Mrs. Matson were married on January 15, 1972. During their marriage they resided in Port Heiden. Shannon was born on August 6, 1974. The Matsons separated in August 1975. Mrs. Matson took Shannon with her upon their separation and had physical custody of her until December 1975. At that time she gave the child to her husband, and in February 1976, Mr. Matson placed Shannon in the home of his first cousin, Annie Christensen. At the time of the custody hearing, Mr. Matson lived next door to the Christensens in Port Heiden, which is a native village with about seventy residents. Should he be awarded custody, Mr. Matson intends to leave Shannon with the Christensens.

On January 1, 1978, Mrs. Matson took Shannon from the Christensen residence to her home in Kenai. Four days later Mr. Matson filed a divorce complaint and a motion for a preliminary injunction requesting that custody of Shannon be placed in himself or the Christensens pendente lite. The court granted the motion, ordering that temporary custody be placed in Mr. Matson. On April 21, 1978, the divorce was granted, and pursuant to stipulation of the parties the custody issue was reserved for future determination.

The parties stipulated to the appointment of a special master, before whom the custody hearing was held on September 18, 1979. The special master viewed the dispute as being between a parent, Mrs. Matson, and a non-parent, Mrs. Christensen. Consequently, he applied the legal standards articulated by this court in *Turner v. Pannick*, 540 P.2d 1051 (Alaska 1975). *Turner* stands for the proposition that before a non-parent may be awarded custody as against a parent, the parent must be found to be unfit, or to have abandoned the child, or it must be found that the welfare of the child re-

quires that custody be awarded to the non-parent. *Id.* at 1055. Finding that the requirements of *Turner* had not been met, the special master recommended an award of custody to Mrs. Matson. He also found, in the alternative, that even if the standards applicable to disputes between parents were applied, custody should be awarded to Mrs. Matson. In custody disputes between parents a "best interests of the child" test is applied, whereby all relevant factors are examined including those specified by statute. *See* AS 09.55.205 and discussion *infra*. Mr. Matson filed objections to the master's findings.

On March 13, 1980, the trial court issued a memorandum of decision and an order rejecting the special master's determination. The court decided that Mr. Matson was seeking custody, and, on the basis of its own "best interests" determination, awarded custody to Mr. Matson. Mrs. Matson has appealed.

We are thus presented with two issues. First, we must consider whether Mr. Matson is actually seeking custody or whether he is merely acting as part of a subterfuge to gain custody for the Christensens. Answering this question will determine which legal standard is applicable; whether it is the rule of *Turner v. Pannick* or the "best interests of the child" test. Next we must ascertain whether the special master was clearly wrong in finding that, under whatever standard is applied, custody should be awarded to Mrs. Matson.[1]

## IS MR. MATSON SEEKING CUSTODY?

It is clear that Shannon will not reside with Mr. Matson should he prevail, but we do not view this as conclusive that he is not seeking custody. *See Carle v. Carle*, 503 P.2d 1050 (Alaska 1972). Custody is not simply a matter of physical care and control of a child. Rather, as we noted in *Delgado*

---

1. The "clearly erroneous" standard of review is compelled by Alaska R.Civ.P. 53(d)(2) which provides in part:

   In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous.... The court

   after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

   *See also* 5A Moore's Federal Practice ¶ 53.12[4] at 53–125 (2d ed. 1980).

*v. Fawcett*, 515 P.2d 710, 712–13 (Alaska 1973):

> "Custody" has no fixed legal significance. It involves a variety of parental rights and duties which vary according to the circumstances of the relationship of the child to the parent. Custody pertains not only to the parental control of the child, but is inseparably linked to the parent's rights of access and companionship with his offspring. There are, of course, no precise contours to the complex of rights denoted by "custody," . . . [Footnotes omitted]

Our examination of the present relationship between Mr. Matson and Shannon has convinced us that he is seeking custody. Mr. Matson visits with Shannon every day, and she spends the night with him about once a month. His residence at the time of the custody hearing was approximately 150 yards away from the Christensen home, and he has expressed an intention to remain nearby so that he may continue to participate in Shannon's upbringing. We also note that nearly everyone is related in Port Heiden. Consequently, it is likely to be a supportive atmosphere for Shannon. Given these particular facts, we agree with the trial court that this is a dispute between parents, and that the "best interests of the child" test, set forth in AS 09.55.205, is applicable.

## WERE THE SPECIAL MASTER'S FINDINGS CLEARLY ERRONEOUS?

Although he relied primarily on *Turner v. Pannick*, the special master also found that the "best interests" of Shannon compelled an award of custody to Mrs. Matson. We have carefully examined the record, including the report of the lower court's custody investigator, and we conclude that it was a clear error to so find.

A "best interests" determination in child custody disputes requires the consideration of all relevant factors including the following: (1) the physical, emotional, mental, religious and social needs of the child; (2) the capability and desire of each parent to meet these needs; (3) the child's preference; (4) the love and affection existing between the child and each parent; (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (6) the desire and ability of each parent to allow an open and loving relationship between the child and his other parent. AS 09.55.205. It appears that Shannon has strong social and emotional ties to her present environment, where her needs are well satisfied. The evidence also suggests that she prefers to remain where she is, and that there is a great deal of love and affection between her and her present family. Shannon had been living with the Christensens in Port Heiden for several years prior to this litigation and has remained there during its course, so there is significant value in maintaining that continuity. Finally, although there have been some difficulties in arranging visitation, they do not appear to be insurmountable. Given these circumstances, we agree with the trial court's disregard for the master's findings. The findings were clearly erroneous.

Therefore, the trial court's order awarding custody to Mr. Matson is AFFIRMED.

COMPTON, Justice, dissenting.

The only vestiges of a parenting relationship between Mr. Matson and his daughter Shannon is that he lives in the same small community and that he visits Shannon for an hour each day when he is in town. On these minimal facts the majority conclude that this relationship is sufficient to constitute Mr. Matson's "custody" of Shannon and that, therefore, the less demanding "best interests" standard is applicable. With these conclusions, I cannot agree.

While the contours of "custody" are admittedly not amenable to precise definition,[1] for that concept to be any more than a hollow legal label requires a more searching inquiry into the indicia of a *parenting* relationship. In the present case, I think the conclusion ineludible that Mr. Matson

---

1. *Delgado v. Fawcett*, 515 P.2d 710, 712 (Alaska 1973).

has abdicated all parental authority to the Christensens, and that it is the Christensens who in fact seek "custody" of Shannon. It is uncontroverted that the father and the Christensens intend for Shannon to permanently reside in the Christensens' home. The Christensens provide all financial support for Shannon. Most importantly, there is absolutely no evidence that Mr. Matson makes any decisions regarding the rearing of Shannon, except of course the "decision" to authorize the Christensens to raise his daughter.

One ramification of the majority's unwarranted characterization of this dispute as between two parents is that the resultant award of custody to Mr. Matson authorizes him to unilaterally remove the child from the Christensen home. The father has a second wife and baby daughter, yet there is no evidence regarding Shannon's relationship with either her stepmother or stepsister. There is no evidence of the father's or stepmother's current parenting abilities, neither of whom were interviewed by the custody investigator. Indeed, there is no evidence regarding even the physical condition of the Matson home. That it may be possible to modify the decree were Mr. Matson to remove Shannon from the Christensen home does not, in my view, sufficiently safeguard the welfare of the child.[2]

Of more general concern, the unduly expansive characterization of "custody" adopted by the majority can only invite future instances of subterfuge. A third party need only elicit one of the parents to nominally seek custody in order to substantially increase the likelihood that the other parent's claim for custody will be defeated.[3]

Further, I note that in disputes between a parent and a non-parent this court has held that absent a finding of parental unfitness or abandonment, the non-parent must show by a preponderance of the evidence that an award of custody would be "clearly detrimental" to the child. *Britt v. Britt*, 567 P.2d 308, 310 (Alaska 1977); *Turner v. Pannick*, 540 P.2d 1051, 1055 (Alaska 1975). The majority's treatment of this case substantially undermines the "clearly detrimental" standard, a rule reflective of the historic preference for parental custody. Were the majority of the court to conclude that the preference for parental custody should only be expressed in terms of the "best interests" of the child, I think it far preferable to directly confront the rule of *Turner v. Pannick* than to affirm it on the one hand, while so severely limiting its effect on the other that it has little continuing vitality.[4]

I conclude, therefore, that this dispute is best characterized as one between a parent and a non-parent. Accordingly, I view the dispositive question as whether sufficient evidence was introduced to demonstrate that an award of custody to the mother would be clearly detrimental to Shannon.

The clearly detrimental standard comprehends those situations where an otherwise fit parent is denied custody because compelling considerations militate in favor of an award of custody to a non-parent. It is erroneous to interpret the standard in a fashion which renders it indistinguishable

---

**2.** Since the court rests its award of custody on such attenuated grounds, it is surely not idle conjecture to consider whether such future changes as the father's proximity, or even his desire to visit Shannon on a regular basis could serve as the basis for an action to modify the custody order.

**3.** In the present case, it is uncontroverted that the Christensens have financed Mr. Matson's litigation expenses.

**4.** Several justices of this court have previously opined that little clarity is obtained in attempting to articulate a meaningful distinction be-

tween the "best interests" and the "clearly detrimental" standards. *See Turner v. Pannick*, 540 P.2d at 1056 (Rabinowitz, C.J., concurring).

Even assuming that such a meaningful distinction can be drawn, the *Turner* rule is problematic because it requires a categorization of whether it is a parent or a non-parent who seeks "custody". As the present case cogently illustrates, the concept of "custody" is not amenable to such a formalistic inquiry. It is thus arguably undesirable for so much to revolve about the label which a trial court attaches to a parent's proposed relationship with the child.

from a showing of parental unfitness.[5] I add, further, that it is improper to infer that the clearly detrimental standard requires the same quantum of evidence in all cases where a non-parent seeks custody over the objection of a fit, natural parent. In other contexts, this court has noted that it is undesirable to resolve sensitive custody disputes by the "mechanistic application" of rigid rules or presumptions. *E.g., Johnson v. Johnson*, 564 P.2d 71, 74 (Alaska 1977) (rejection of "tender years" doctrine). The preference for awarding custody to natural parents should similarly be adaptable to the many different factual contexts in which custody disputes arise. *See Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512, 515 (1980) (concurring opinion). Thus, for example, where a non-parent is the child's "psychological parent," or where the child has lived with the non-parent for a substantial length without contact with the natural parent, the parental preference should be accorded less weight.

Mindful of the broad discretion necessarily delegated to the trier of fact, I nonetheless conclude that the special master was clearly erroneous in finding that it would not be clearly detrimental to sever Shannon's ties with the Christensen family. Shannon, now seven years old, has lived in the Christensen home since February 1976. She identifies Mrs. Christensen as her "psychological parent." In addition, she enjoys close relationships with her "siblings," the Christensens' natural children. The court-appointed custody investigator concluded that "to remove the child from the setting she is now in, [sic] would be extremely disruptive to her and would not be in her best interest."

The contrasting consideration was that the mother appears to offer an adequate home environment. But, the child had had little contact with her mother during the three years before the hearing, and no contact with her stepfather. The master nonetheless concluded that Shannon could adjust to the new environment without great difficulty, or at least without lasting effect. The only "expert" evidence available to the master, the report of the custody investigator, concluded otherwise.[6] In addition, it is noteworthy that a guardian ad litem was not present at the hearing. *See Carle v. Carle*, 503 P.2d 1050, 1054 (Alaska 1972).

In my view, therefore, it was clearly erroneous for the master to find that an award of custody to the parent would not be clearly detrimental to Shannon. Here, stability itself may be the most salient consideration. *See* Gruenberg & Mackey, A New Direction For Child Custody in Alaska, 6 U.C.L.A.-Alaska L.Rev. 34 (1976). To remove Shannon from the only stable home environment she has known would sever her bond to her "psychological parent," *see Hoy v. Willis*, 165 N.J.Super. 265, 398 A.2d 109 (1978), and to her "siblings." *Nichols v. Nichols*, 516 P.2d 732 (Alaska 1973). Such considerations are sufficient, in my view, to establish a showing of a clear detriment. *Contra, Hickey v. Bell*, 391 P.2d 447 (Alaska 1964).

In sum, I would reverse the judgment of the superior court and would remand this case with instructions to award custody of Shannon to the Christensens.

---

5. The *Britt* case inadvertently invited such a restrictive interpretation. We stated:
   The trial court's findings that Gale Britt was an unfit parent (or in the terms of the *Turner* opinion, that placing custody with her would be clearly detrimental to the child) ...."
   567 P.2d at 310.

6. I am constrained to add that the present case evinces the desirability of procuring the testimony of an expert, such as a child psychologist. *See Starkweather v. Curritt*, 636 P.2d 1181, 1183 n.3 (Alaska Nov. 27, 1981).