**Allan Maynard HAYES, Appellant,**

v.

**Lidia Rodewald HAYES, Appellee.**

No. S–6624.

Supreme Court of Alaska.

Sept. 6, 1996.

Fred W. Triem, Petersburg, for Appellant.

Mary E. Guss, Ketchikan, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

Allan Hayes and Lidia Hayes were divorced in August of 1993. Allan appeals the superior court's award of custody over two children, Lexie and Isaac. He also appeals the superior court's refusal to order Lidia to repay money that she borrowed from the children's Permanent Fund Dividends.

### II. FACTS AND PROCEEDINGS

Allan and Lidia commenced living together in the summer of 1984. They were married on June 21, 1986, and separated in March, 1992. In February of 1994, trial was held on the issues of custody of the children and property distribution. In this appeal, Allan Hayes is primarily challenging the superior court's custody determination.

There are two children involved in this case. Isaac Hayes is Lidia's son and Allan's stepson and has lived with Lidia and Allan since he was three years old. He is currently fifteen years old. Although Allan apparently made some efforts to officially adopt Isaac, this never actually happened. Lexie Hayes is the daughter of Allan and Lidia. She is currently nine years old.

Originally, under temporary orders, the parties shared physical custody of the two children. Lidia was to have custody of the children during the week and Allan was to have custody on the weekends. However, since Lidia had decided to move away from Wrangell, where the family had resided, the superior court's final order granted physical custody of both children to Lidia during the entire school year and to Allan during the

summers and some portion of the Christmas holidays.

Allan's arguments concerning the custody award are two-fold. First, he asserts that the superior court should not have required him to prove that awarding primary custody of Isaac to Lidia would be detrimental to Isaac. The superior court required him to make this showing based only on the fact that Allan is not the biological father of Isaac. His second contention is that the superior court failed to properly consider the ramifications of moving the children away from their home in Wrangell in reaching its custody decision.

At trial, Lidia testified that she "borrowed" $4,000 of the children's Permanent Fund Dividends and had orally agreed with the children to repay them. Allan appeals the superior court's refusal to order Lidia to repay the $4,000 she borrowed from the two children.

### III. DISCUSSION

#### A. The Superior Court's Holdings

■ In its conclusions of law, the superior court observed:

Alaska law acknowledges a preference for the biological parent in custody disputes. *Turner v. Pannick,* 540 P.2d 1051, 1053 (Alaska 1975). However, a non-parent may be awarded custody of a child if the non-parent can show that the parent is unfit, has abandoned the child, or that the child's welfare requires that a non-parent receive custody. *Id.* at 1055. In *Turner,* the Alaska Supreme Court held that "welfare of the child" required the non-parent to show that it would be clearly detrimental to the child to permit the biological parent to have custody. *Id.* at 1054. The burden of proving this detriment is on the non-parent. *Britt v. Britt,* 567 P.2d 308, 310 (Alaska 1977).[1]

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The superior court further observed:
   The Alaska Supreme Court has stated that a non-parent who has an *in loco parentis* relationship with a child may be able to show that removing the child from their care would con-

stitute clear detriment to the child's welfare. *Buness [v. Gillen,* 781 P.2d 985, 989 n. 8 (Alaska 1989)]. In *Buness,* the Court held that there was a question of fact sufficient to defeat summary judgment that clear detriment to the child's welfare would result if the non-parent who had been the primary caretaker and fa-

The superior court then concluded that "Allan has not shown that placement of Isaac with Lidia during the school year will be clearly detrimental to his welfare."

Allan argues that a step-parent who has borne full parental responsibilities is entitled to equal treatment in a child custody dispute with a biological parent. More particularly, Allan asks us to overrule *Turner v. Pannick*, 540 P.2d 1051 (Alaska 1975) (non-parent has the burden of proving that parent is unfit, has abandoned the child, or that the welfare of the child requires that a non-parent receive custody) and *Britt v. Britt*, 567 P.2d 308 (Alaska 1977) (non-parent has the burden of proving that parental custody would be clearly detrimental to the child). Allan's primary contention is that according a biological parent a preference over a step-parent who has not adopted the child violates the equal protection provisions of the Constitutions of both the United States and Alaska.

Given the superior court's alternative findings of fact, conclusions of law, and rationale for its award of primary physical custody of the two minor children to Lidia, we find it unnecessary to address Allan's attacks on the preference heretofore accorded a parent in custody disputes with a non-parent.[2]

### B. *Best Interests Test* [3]

The superior court concluded:

If the court is wrong about the standard to be employed in this case, the same decision would be made if the best interests of the children test were employed. Although both parents are good parents and both

contributed in significant ways to the betterment of their children, the court believes that a review of the statutory factors tips in favor of Lidia.

Our review of the superior court's findings of fact, conclusions of law, and the record in this case persuades us that the superior court did not abuse its discretion in determining that Lidia should be awarded primary physical custody of the two children.

■ Allan argues that the superior court erred in not properly considering the significance of Lidia's proposal to move the two children from Wrangell, where they were both raised, if she received physical custody. Allan observes that "the children have an established custodial environment in Wrangell, where they have extended family, friends, and teachers." Allan's' contentions that the superior court did not properly consider this factor, however, is without merit.

Review of the superior court's findings of fact and conclusions of law indicates that the superior court did consider the "stability and continuity both children have in Wrangell." The superior court concluded:

The only other relevant factor is the stability and continuity both children have in Wrangell. The importance of this factor is clear. *Evans v. Evans*, [869 P.2d 478, 481 (Alaska 1994)]. In many ways this case comes down to balancing Isaac's needs and preferences against the upset that may be caused by a new home and school. Although applying the best interests standard in the case is very difficult because both parents offer so much and the distinc-

---

ther-figure to a child for ten years was denied custody. *Id.*

The underlying rationale in awarding the psychological parent custody in these situations is that a break with the psychological parent would be more traumatic to the child than a break with the natural parent. *Id.* (citing *Doe v. Doe*, 92 Misc.2d 184, 399 N.Y.S.2d 977, 982 (N.Y.Sup.Ct.1977)).

2. This makes it unnecessary for us to reach Allan's argument concerning the constitutionality of according a parent a preference in custody disputes with a non-parent. Additionally, we find Allan's arguments pertaining to equitable adoption and alleged gender bias on the part of the superior court against fathers (or against step-fathers) to be without merit.

3. The superior court is vested with broad discretion making child custody determinations. *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982). As we have stated:

This court will reverse the superior court's resolution of custody issues only if this court is convinced that the record shows an abuse of discretion or if the controlling factual findings are clearly erroneous. Abuse of discretion is established if the trial court considered improper factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination.

*McQuade v. McQuade*, 901 P.2d 421, 424 n. 9 (Alaska 1995) (citations omitted).

tions between them are so fine, in the end the court believes Isaac's emotional needs, his dependency on Lidia and his preference are the most important factors. The court in some ways has a safety net here. Given the maturity and ability to communicate demonstrated by these parents, if Isaac does have extreme difficulty, the court does not doubt that these parents will agree that Isaac should return to Wrangell. Finally, the court has placed great emphasis on the fact that what is at issue here is simply which parent has the children for the winter months. Allan will continue to play an important and consistent role in Isaac's life. The only real problem then is the change of schools. While this is an important concern, the court is convinced that Isaac has the intelligence to handle the transition and that the continuity and stability offered by his relationship with Lidia is more important than continuity of a geographic location or school.[4]

Based on our review of the record, we hold that it was not an abuse of discretion for the superior court to decide that the importance of keeping the children in Wrangell was outweighed by other competing relevant considerations in the case.

■ Allan's ancillary argument, that a parent seeking to move the children away from their previous home should be required to make a showing, by clear and convincing evidence, that such a move is in the children's best interests, is contrary to this court's decisions. In *McQuade v. McQuade*, 901 P.2d 421 (Alaska 1995), we had occasion to address the appropriate standards to be applied where one parent chooses to move out of state. In reviewing the superior court's custody determination, we alluded to our decision in *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989):

First, we considered the best interests of the children in light of the criteria in AS 25.24.150(c) and concluded that the record

supported the trial court's findings that remaining in the custody of the parent who was moving would be in the children's best interests. [*House*, 779 P.2d] at 1208. Second, we noted that "[m]ost states permit custodial parents to move out of state with their children if there is a legitimate reason for the move." *Id.* We then concluded that the "decision of the family to move to [California] was based upon a valid reason, that is, a reason which was not primarily motivated by a desire to make visitation ... more difficult." *Id.* Thus, in making a custody determination where the existing custodial parent chooses to move out of state, a court must consider the best interests of the children by applying the criteria in AS 25.24.150(c), and in so doing should consider whether there is a legitimate reason for the move.

*McQuade*, 901 P.2d at 423–24 (footnote and citation omitted).

We further stated:

We have consistently avoided mandating rigid rules for making custody determinations. *See, e.g., Nichols v. Nichols*, 516 P.2d 732, 736 (Alaska 1973) (stating that in custody matters, "there is no hard and fast rule").... [I]n the circumstance where the custodial parent desires to move out of Alaska, we consider the best interests of the child so that such determinations are based upon the facts and circumstances of each particular case. We therefore conclude that the standard set out in *House* is the proper standard to apply in the factual circumstance where one parent is planning to move out of Alaska.

*Id.* at 424.

Neither *House* nor *McQuade* imposed upon the parent seeking to move the children away from their previous home a requirement to show, by clear and convincing evidence, that such a move is in the children's best interests. We are not persuaded that an enhanced burden of proof, in addition to

---

4. In its conclusions of law, the superior court decided that

[t]he decision concerning Lexie is much less difficult. Both parents are equally qualified for custody during the school year. There is

very little difference between them. Given the expert's, the GAL's, Isaac's and the parents' firm opinions that Lexie should not be separated from her brother, placement with Lidia during the school year is the only option.

the *House* and *McQuade* criteria, should be adopted.[5]

## C. *Permanent Fund Dividends* [6]

Allan's last argument is that it was error on the superior court's part to refuse to order Lidia to repay some $4,000 which she borrowed from her children's Permanent Fund Dividends (PFDs).

At trial Lidia testified that "[t]he last two years I have taken out a loan from my kids with their dividends because I needed to pay bills." Lidia further testified that she had a verbal agreement with her children to repay them $2,000 each.[7] During final argument, Allan's counsel requested an order "that says Permanent Funds will go into a trust fund, not to be spent in the meantime." In response to this request the superior court, in its conclusions of law, provided as follows:

> Allan is to apply for the children's PFD each year that they are eligible. The PFD is to be deposited each year in an interest bearing account and held for the children. When each child reaches 18 years, the money in the account is to be turned over to the child. No money is to be withdrawn from the accounts until then.

Allan then moved for reconsideration of the issue of the children's PFDs. More specifically, Allan requested that Lidia be ordered to repay the borrowed $4,000 to the children's trust account. In its order denying reconsideration the superior court stated:

> At the conclusion of trial, the court ordered that Mr. Hayes apply for and deposit the children's permanent fund dividends. The dividends are to be deposited in interest bearing accounts and not invaded until each child turns eighteen. Mr. Hayes has asked the court to reconsider the extent of this order. He wishes the court to order

that Ms. Hayes pay back the children's permanent fund money she borrowed during the parties' separation. Ms. Hayes opposes this request.

> The court has considered both arguments and concludes that no modification to the original order will be made. While it is true that Ms. Hayes agreed to pay the money back, that agreement is between her and the children. Furthermore, during the parties' separation, for the peculiar reasons already explained in paragraph 22 of the Conclusions of Law dated March 22, 1994, Mr. Hayes underpaid the amount of child support actually due. Although Mr. Hayes' underpayment was not done in bad faith or intentionally, the fact remains that during the separation, Ms. Hayes paid more than her share of child care costs. Given these factors, the court will not order Ms. Hayes to payback [sic] the money.

Before the superior court, Allan conceded that "Alaska law is silent or incomplete on the subject of a parent's duty to administer their children's Permanent Fund Dividend monies." In *Lee v. Cox*, 790 P.2d 1359 (Alaska 1990), one of the points in contention in the appeal was whether the superior court abused its discretion in ordering the mother to reimburse her son for all Permanent Fund Dividends received on his behalf. In regard to this contention, we said:

> [Mr. Cox] properly concedes that "there is no law in this state requiring parents to set aside their children's permanent funds." *See, e.g., L.A.M. v. State*, 547 P.2d 827, 832–33 n. 13 (Alaska 1976) (enumerating among those "parental rights" protected by the constitution "the right to control and manage" a minor child's earnings and property).... Moreover, the record contains no findings by the trial court which

---

5. Moreover, we do not read the *House* and *McQuade* criteria as requiring the custodial parent to show, under any standard of proof, that the move proposed is in the children's best interests. Rather, the showing must be that it is in the children's best interests to remain in the custody of the present custodial parent, given the proposed move. *See House*, 779 P.2d at 1208.

6. None of the relevant facts are disputed. All that remains to be determined is the legal implications of these facts. This is a question of law,

which we review *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2.

7. In response to a question by Allan's counsel regarding whether Lidia would agree to placement of the children's PFDs in a separate savings account for their college education, Lidia responded that she would agree to such a proposal in regard to future PFDs received on the children's behalf.

support [Mr. Cox's] assertion that the parties contractually agreed to set aside the permanent fund monies.

*Id.* at 1363.

Alaska Statute 43.23.005(c) provides that "[a] parent, guardian, or other authorized representative may claim a Permanent Fund Dividend on behalf of an unemancipated minor or an behalf of a disabled or incompetent individual who is eligible to receive a payment under this section." In this appeal, Allan again concedes that the statute is silent concerning what a parent must or should do with a dividend after it is distributed. He attempts to distinguish *Lee* by noting that the record in the instant case clearly indicates an agreement to repay the PFD monies. The agreement Allan refers to, however, is between Lidia and the children, not between Lidia and Allan. Although it is clear that Lidia did promise the children that she would repay the $4,000, she made no promise to Allan, and reached no agreement with him, regarding repayment of those funds.

Given our holding in *Lee,* the superior court's explanation for its ruling, and the legislature's silence as to what parents must or should do with PFDs received on behalf of unemancipated minors, we hold that the superior court did not err in rejecting Allan's motion that Lidia be required to repay the $4,000 in PFD monies that she borrowed.

## IV. CONCLUSION

The superior court's judgment is AFFIRMED.

MOORE, J., not participating.