Virginia L. **GLASGOW**, Appellant,

v.

Charles B. **GLASGOW**, Appellee.

No. 749.

Supreme Court of Alaska.

April 24, 1967.

William B. Emmal, Fairbanks, for appellant.

Robert A. Parrish, Fairbanks, for appellee.

Before NESBETT, C. J., DIMOND, J., and SANDERS, Superior Court Judge.

NESBETT, Chief Justice.

After a contested trial on the divorce complaint of appellant Virginia Glasgow and on the counterclaim of appellee Charles Glasgow, the trial court granted a divorce to appellant but awarded custody of the three minor children of the parties to the appellee father.

Appellant bases her appeal on the grounds that the court abused its discretion in awarding custody of the children to appellee and that the custody decree is not supported by sufficient evidence.

On April 19, 1965, after appellant had returned to the family home in Fairbanks, Alaska, from an extended vacation in California, appellee filed a complaint for divorce. The parties thereafter reached a reconciliation and the suit was dismissed by appellee on May 10, 1965. The reconciliation did not last however, and on July 12, 1965, shortly after appellee's return from a vacation in Mexico, appellant filed a complaint for divorce alleging an incompatibility of temperament caused by appellee's conduct which allegedly caused innumerable quarrels and differences of opinion. Appellant sought custody of the parties' three children and $225.00 monthly for their support.

Appellee counterclaimed alleging that the parties' marital difficulties arose out of appellant's adulterous conduct with one Robert Pedersen. Appellee sought a decree of divorce and custody of the three minor children.

After a one-day trial on December 9, 1965, the trial court granted appellant a

divorce [1] but awarded custody of the three children to the appellee.

Since appellant contends that the evidence is insufficient to support the court's judgment, the evidence produced at the trial will be reviewed.

Appellant testified that after the May 10, 1965, reconciliation there had been constant fighting between the parties and that appellee "nagged" her continually; that appellee had contributed only $490.00 for the support of the two children living with appellant from the time of their separation until the time of trial (a period of about five months). On cross-examination appellant admitted that her relationship with Robert Pedersen had created a problem between herself and her husband but she contended that it was not the main problem between them. Appellant testified that a marriage counselor, a minister, had advised her that if she would discontinue seeing Pedersen the parties' marriage could be saved. Appellant admitted that since the middle of July 1965 she had seen Pedersen almost daily and that normally Pedersen took her to work and brought her home and usually stayed for dinner and to watch television. Appellant also testified that Pedersen had bought most of the groceries for herself and the two children living with her from the time of the July 1965 separation until the time of trial.

Appellee testified that he had been employed as a mechanic by Pan American World Airways since 1952 and that his salary was $640.00 per month plus $195.00 living allowance; that his hours of employment were from 6 p. m. until 2 a. m.; that he believed that his marriage was not successful because of the relationship between his wife and Pedersen; that he and his wife had their first big argument over Pedersen in December 1963 because he felt that Pedersen had been around the house too much; that his wife had admitted having "an adultery relationship [sic] with Mr. Pedersen"; that he dismissed his action for divorce in May 1965 because his wife had led him to believe that she would "give up the relationship with Mr. Pedersen if I dropped the divorce suit" in order that she might remain with the children; that after the dismissal of his suit on May 10, 1965, appellant talked with Pedersen on the telephone on numerous occasions and admitted to appellee that she had had coffee and lunch with him; that when appellee returned from a three week vacation in Mexico in early July 1965 appellant told him that her "friendship" with Pedersen was more important than the parties' marriage and that she was in love with Pedersen and would marry him if he would have her; that the eldest child, Michael, had lived with him since the July separation of the parties; that his daughter Terry Lee, age 9, had told him after the July separation that she was not happy under existing conditions and expressed her desire to come and live with appellee if her mother should marry Mr. Pedersen; that she did not care for Pedersen and did not like the way things were at home; that since their separation appellee had seen Pedersen's car in front of his wife's home as late as 4 a. m. on one occasion; that if he were awarded the children he would see that they had a proper home. On cross-examination appellee admitted that appellant was a good mother and took good care of the children.

Leslie D. Patterson, a neighbor and a long-time close friend of the parties, testified that although he believed appellant had been a real good mother to her children and "probably still is" he also believed that appellee was the proper person to have custody of the children because he believed appellant

---

1. After making numerous observations in its oral decision which were highly critical of appellant's conduct, the court stated:

> I further believe that, if for no other reason, chivalry alone should prompt both the [appellee] * * *

and this Court to grant the divorce to the [appellant] * * *.

Although not made an issue in this appeal, it should be noted that the court's statement has no basis in the statutory or case law of Alaska.

would place Pedersen ahead of her children. Mrs. Gloria Rosley, a long-time neighbor of the parties, testified that she thought that appellee "was a good father, and that if he did have [custody of] the children he would be responsible for them and take good care of them." She also testified that appellant had been a good mother but that present circumstances had altered the situation. Mrs. Kathy Thompson testified that she had known the parties about four years; that she had lived across the street from appellant since October 1, 1965; that Pedersen's car was in front of appellant's house almost every night; that she believed appellant's relationship with Pedersen was a matter of common knowledge in the neighborhood; that she believed appellee was the proper person to have custody of the children. Mrs. Carol Isaacs testified that she had been a neighbor of the parties, off-and-on for the past three years; that appellee would be a responsible and good father to the children and that appellant was a good mother. Bernard Holtrop, a co-worker and friend of appellee's, testified that appellee was a fit and proper person to have custody of the children but also testified that he had never seen anything to indicate that appellant was an unfit mother. Mrs. Bernard Holtrop, a friend of the parties, testified that the older boy's attitude toward his father was a very happy and healthful one; that when she had stopped at the parties' home (apparently before the July separation) Pedersen quite frequently called on the telephone or was there; that while she did not believe that appellant was an unfit mother she was of the opinion that appellee would be better for the children than appellant because "right now Bob Pedersen is more important to [appellant] * * *

than the children" and because the older boy seemed so happy with his father while the girl, who was residing with the appellant, seemed to be unusually nervous in the summer of 1965.

Mrs. Sharon Johnston testified for appellant and stated that she had known the parties about 12 years; that appellant took good care of her children and that she was a fit and proper person to have their custody. Mr. William Hensley, a neighbor of the parties, testified on behalf of appellant that appellant was a very capable mother and that her children did not want for anything; that appellant was the proper person to have custody and that he would not say that appellee was not a proper person to have custody.

In its memorandum opinion the trial court discussed and considered the particular facts as related to each of the minor children and concluded that Michael, age 12, was at the age when he needed the reassuring hand of his father and that in view of appellant's wrongful conduct, which compromised the marriage and set a poor example, the custody of Terry, age 9, and Buddy, age 7, should likewise go to appellee father.

■ We find that the evidence produced was sufficient to support the court's custody decree. We further find that the trial court did not abuse its discretion in making the custody award.

The award of custody in divorce actions in Alaska is governed by a statute [2] which provides that the court may provide for the care and custody of minor children as it considers just and proper, considering the age and sex of the children and that unless otherwise manifestly improper, it should give preference to the party not in fault.

2. AS 09.55.210. This statute states in part as follows:
> Judgment. In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
> (1) for the care and custody of the minor children of the marriage as it

> considers just and proper, having due regard to the age and sex of the children, and, unless otherwise manifestly improper, giving the preference to the party not in fault * * *.

In Rhodes v. Rhodes,[3] in affirming an award of custody to the mother, this court said:

In determining the custody of children the trial court should be guided by the rule of quite general application that the welfare and best interests of the children should be given paramount consideration. Also, consideration should be given to the desirability of keeping the children of the family together so that they may enjoy the normal condition of childhood of growing up together as brothers and sisters.

It is obvious from a reading of the court's decision that the court observed the above considerations. The facts before us are similar to those of Harding v. Harding [4] where, in affirming an award of custody of two of three minor children to the father, this court stated:

While, as a general rule the courts give the mother preference in awarding the custody of her children, if she is found to be a fit and proper parent, the rule is contingent upon 'other things being equal' and subject to the discretionary power of the court to safeguard the best interests of the children.

Here, although the court did not find that appellant was not a fit and proper person to have custody, in its finding number 8 the court did state:

8. [Appellant] * * * persists in conduct contrary to the best interests of the children.

In its finding number 9 the court found:

9. [Appellee] * * * is the fit and proper person to have the care, custody and control of the minor children.

Our review of the evidence convinces us that there was ample evidence, most of it uncontradicted, to support and justify the court's finding that appellant's conduct was contrary to the best interests of the children and to support its award of custody to appellee.

The judgment below is affirmed.

3. 370 P.2d 902, 903 (Alaska 1962). (Footnotes omitted.)

4. 377 P.2d 378, 379 (Alaska 1962). (Footnote omitted.)