**Suzanne Karen BASS, Appellant,**

v.

**Larry Eugene BASS, Appellee.**

**No. 832.**

Supreme Court of Alaska.

Feb. 21, 1968.

John M. Stern, Jr., Anchorage, for appellant.

John S. Hellenthal, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In the superior court's decree of divorce it was adjudged that the "legal custody" of the parties' minor son be "retained in both parents"; on the other hand, "physical custody" of the infant was awarded to the paternal grandparents.[1] In addition to granting appellant reasonable visitation rights, the court's decree expressly reserved "jurisdiction over the question of final custody of the minor child."[2] Appellant's

---

1. The language of the decree is as follows: Legal custody of the minor child, RAYMOND DONALD BASS, be, and the same hereby is, retained in both parents, but physical custody of said child is hereby awarded to Francis and Lucille Thistle, paternal grandparents, of Anchorage, Alaska, with reasonable rights of visitation in the defendant.

2. AS 09.55.210 of our Code of Civil Procedure provides in part that:

In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

(1) for the care and custody of the minor children of the marriage as it considers just and proper, having due regard to the age and sex of the children, and, unless otherwise manifestly improper, giving the preference to the party not in fault * * *.

cardinal contention on this appeal is that the court erred in awarding custody of her son to the paternal grandparents.

Criteria for resolution of custody issues have been enunciated in our decisions beginning with Rhodes v. Rhodes.[3] There we said that:

In determining the custody of children the trial court should be guided by the rule of quite general application that the welfare and the best interests of the children should be given paramount consideration.[4]

Also pertinent here is our decision in Harding v. Harding[5] where it was said:

While, as a general rule the courts give the mother preference in awarding the custody of her children, if she is found to be a fit and proper parent, the rule is contingent upon 'other things being equal' and subject to the discretionary power of the court to safeguard the best interests of the children.

Further articulation of general principles concerning child custody can be found in Wilson v. Mitchell[6] where we stated:

Where there is a controversy between a parent and grandparents over the custody of a child, we have held that:

'[The] parent is entitled to a preference over the grandparents, unless it is clearly shown that the parent is unfit for the trust, or that the welfare of the child requires it to be in the custody of the grandparents.'[7]

The record in this appeal discloses that the trial judge found that appellant was an unfit mother, and that the "welfare of the child would best be served by awarding physical custody" of the child to the paternal grandparents.[8]

Our task in this appeal is to determine whether the trial court misapplied the broad discretion vested in it in determination of custody questions[9] and whether or not the court's findings were clearly erroneous.[10]

---

3. 370 P.2d 902, 903 (Alaska 1962) (footnote omitted).

4. The *Rhodes* principle concerning the primacy of the child's welfare has been followed in our subsequent decisions in Harding v. Harding, 377 P.2d 378, 379 (Alaska 1962); Ransier v. Ransier, 414 P.2d 956, 957 (Alaska 1966); Glasgow v. Glasgow, 426 P.2d 617, 620 (Alaska 1967).

5. 377 P.2d 378, 379 (Alaska 1962) (footnote omitted).

6. 406 P.2d 4, 7 (Alaska 1965) (footnote omitted).

7. The rule referred to in Wilson v. Mitchell was stated in our earlier opinion in Hickey v. Bell, 391 P.2d 447, 448 (Alaska 1964). That case involved an adoption dispute between the natural father and the child's grandparents. We concluded that the record did not support the grandparents' claim "that the legal preference of the father be ignored and custody given to the grandparents."

8. The full finding of fact on this issue reads as follows:

One child has been born the issue of the marriage of the parties, namely RAYMOND DONALD BASS, born March 31, 1965. The court hereby finds the defendant to be an unfit mother and further finds that the welfare of the child would best be served by awarding physical custody of the said child to the paternal grandparents, namely Francis Thistle and Lucille Thistle, of Anchorage, Alaska, however, retaining legal custody of said child in the plaintiff and the defendant.

9. In Rhodes v. Rhodes, 370 P.2d 902, 903 (Alaska 1962), we said of the trial court's duty to provide for the care and custody of minor children in divorce proceedings that, "This places a grave responsibility upon the court and at the same time gives it a broad discretion." See also Ransier v. Ransier, 414 P.2d 956, 957 (Alaska 1966) (footnote omitted), where it was stated:

From our review of the record we are not able to find, as we are urged to do by appellant, that the award of custody to appellee upon the basis of the relative fault of the parties was an abuse of discretion.

10. In Rhodes v. Rhodes, 370 P.2d 902, 904 (Alaska 1962), the test was stated as whether or not such findings of the trial court were "against the clear weight of the evidence." See also Civ.R. 52(a) which provides in part:

Findings of fact shall not be set aside unless clearly erroneous, and due re-

Our review of the conflicting evidence [11] relating to the custody question has led us to the conclusion that there is ample support in the record for the court's findings, and that the trial judge did not commit an abuse of discretion in placing temporary physical custody of the child in the paternal grandparents. The record shows appellant's emotional immaturity, [12] her general neglect of the child's physical needs, the lack of attention on her part to the child's health, and appellant's overall lack of interest in bringing up the child. Also demonstrated was the fitness of the child's paternal grandparents to exercise temporary physical custody. [13] We also deem it significant that the trial court "expressly reserve[d] jurisdiction over the

gard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

11. In Harding v. Harding, 377 P.2d 378, 380 (Alaska 1962) (footnote omitted), it was said, in part, that, "The fact that the award of custody was based upon extremely conflicting evidence does not of itself show an abuse of discretion." In Wilson v. Mitchell, 406 P.2d 4, 7 (Alaska 1965) (footnote omitted), in regard to issues of credibility and application of the "clearly erroneous" criterion, we said:

The trial judge saw and heard the witnesses; we did not. We are required to give due regard to his opportunity to judge the witnesses' credibility. Under the evidence the judge had a rational basis for concluding that the welfare of [the child] would not be adversely affected if she were given to her mother to rear and that the mother * * * was a fit person to have custody of her child.

12. Appellant contends that her immaturity is irrelevant to the decision of the custody question. We disagree. In Osko v. Osko, 230 Or. 247, 369 P.2d 737, 738 (1962), the court said:

The parties were married in 1958 when both were still in high school, and the problems confronting these immature young people were compounded when plaintiff departed within a few months for service in the navy. * * * * * * The trial judge concluded, and we think properly, that the plaintiff entirely failed to demonstrate sufficient maturity or stability to justify entrusting him with the important responsibility of rearing his child.

In the case at bar, the record discloses that at the time of their marriage appellant and appellee's ages were seventeen and eighteen respectively. The record further shows that they lived together as husband and wife for less than one year.

13. In his oral decision, the trial judge stated in part:

Everything else being equal for a child this age there isn't any question at all that the child is best off with his mother as between a mother or a father and the grandparents. * * * The problem is here that we have a mother who has not taken the interest that a mother should take in her child. Once again I'm not faulting her; I don't think she knows how. And as [appellant's counsel] has said the best way to learn is by doing, and I couldn't agree more. But this girl hasn't tried to do. Frankly I don't believe her when she says that she has always changed the baby when he needed changing, she has always washed the clothes as they needed to be washed, she's never brought back dirty clothes. * * * There isn't any question at all that by a little bit of training and by a little bit of doing, Mrs. Bass could learn to take care of this child and she could probably do it better than anybody else. She hasn't done so and she hasn't shown any inclination up to now as to how or why or when she would do so. * * * From all this as I said a while ago I have found and do find that as of now and up to this time, Susan Bass is not a fit person to have the physical custody of this child. The question is having made that finding what do we do about it. I haven't overlooked the fact that Larry Bass is just as bad as Susan Bass maybe even worse. I haven't overlooked the fact that he moved from job to job * * *. Because I'm satisfied from what we have here that Susan Bass has not, in any sense of the word, been a mother to Raymond Bass. I started to say then, what do we—what should we do about it? It's perfectly obvious that under the circumstances as we have them now Larry Bass is not in any position to take care of this child, and there hasn't been any showing that he is either emotionally or otherwise equipped to take care of the child. So at this time at least, I rule out giving physical custody of the child to Larry Bass.

question of the final custody of the minor child" in its decree.[14] Under the factual circumstances of this record, we consider this portion of the superior court's decree particularly appropriate. We, therefore, affirm the superior court's decree as it pertains to the custody of appellant's minor son.[15]

■ In his findings of fact the trial judge found that an incompatibility of temperament existed between the parties[16] and entered his decree of divorce upon this ground. Appellant contends that the superior court's finding of an existing incompatibility of temperament was clearly erroneous. Upon review of the pertinent por-

tions of the record, we hold that the finding of incompatibility was not clearly erroneous. In reaching this conclusion, we adopt the definition of incompatibility of temperament which was formulated by the Third Circuit in Burch v. Burch.[17] There the court said:

> We conclude that while incompatibility of temperament in the Virgin Islands Divorce Law does not refer to those petty quarrels and minor bickerings which are but the evidence of that frailty which all humanity is heir to, it unquestionably does refer to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for

14. In his oral opinion the trial judge also recognized that giving the grandparents physical custody was not a permanent solution to the question. He then went on to state:

> I'm going to leave the custody—the physical custody of the child as it is presently for a relatively short period of time. I'm going to request that Susan Bass give some real thought to this thing and see if she can't prepare herself so that she can be a proper mother to the child. And if she can convince me that she is the proper person to have the custody of that child, I'll eventually give her the physical custody. * * * I'm thinking along the lines of about six months to take another look at this thing.

15. In reaching this result we thereby dispose of appellant's contention that the lower court erred in "not giving preferance of custody to Appellant, the party not in fault." This contention is based upon appellant's construction of the record and the language of AS 09.55.210. In our view the paramount criterion of the welfare and best interests of the child overrides consideration of any factor of technical fault. Compare Crume v. Crume, 378 P.2d 183, 186–187 n. 12 (Alaska 1963).

16. By virtue of AS 09.55.110 of our Code of Civil Procedure, incompatibility of temperament is made a ground for divorce.

In his finding of fact, the trial court specifically found that:

> There exists an incompatibility of temperament between the plaintiff and defendant in that their likes and dislikes are widely divergent, resulting in

> constant quarreling, bickering and argument; that any suggestions made by the plaintiff are not agreeable to the defendant; that the parties are unable to agree on anything; that as a result of this incompatibility, continuance of the marriage relationship would be intolerable and burdensome; that plaintiff has tried to the utmost of his ability to live with the defendant as her husband, but finds it impossible so to do.

In his findings of fact, the trial court expressly incorporated the findings of fact contained in his oral decision. In his oral decision, the trial judge made the following comments in regard to incompatibility of temperament:

> The parties have now been separated for a year and two or three months * * * and there doesn't seem to be any real desire on the part of either one to resume the marital relationship. * * * [T]aking everything into consideration it seems to me that there is no purpose to be served by continuing the marriage. * * * I see no point in keeping the people tied together if they are not going to work at living together and there's no indication that they are.
> * * * * *
> These folks weren't ready for marriage and did not work at it when they were married. * * * As a matter of fact I don't consider that the matter of fault is too important. I realize what the statute says, but I don't think it's too important under the facts that we have here. When we come down to the question of fault it's anybody's guess as to just what broke up this marriage.

17. 195 F.2d 799, 806–807 (3d Cir. 1952).

the parties to continue a normal marital relationship with each other. * * * [T]he disharmony of the spouses in their common life must be so deep and intense as to be irremediable. It is the legal recognition of the proposition long established in the earlier Danish law of the Islands that if the parties are so mismated that their marriage has in fact ended as the result of their hopeless disagreement and discord the courts should be empowered to terminate it as a matter of law.[18]

We are of the view that there is adequate evidence in the record to support the trial court's finding of incompatibility under the *Burch* test. Here the record shows that the parties' marriage had in fact ended due to their disagreements and hopeless·discord, and that their conflicts were irreconcilable.

■ Appellant's final point in this appeal is that the trial court erred in considering a report of a child welfare worker in regard to the custody issue. We hold that the trial court's consideration of this report did not constitute error.

In his complaint for divorce in this action, appellee indicated that he would request a report from the Department of Health and Welfare, State of Alaska, as to "what disposition should be made" concerning custody of the child. Appellee thereafter moved, and appellant joined in the request, for a court order calling for such an investigation. On October 26, 1965, the lower court granted the investigatory relief requested by appellee.[19] On November 15, 1965, a report was furnished to the court by the Department of Health and Welfare.[20] After setting forth the nature of the investigation conducted, the author of the report concluded that both parties were immature and displayed considerable dependency upon the paternal grandparents in matters relating to the child's care. The report also indicated that appellant's care of the child had been "negligible" due to appellant's fear, and ignorance concerning the mechanics of child care. The report then stated:

> As a possible plan at this time, we would recommend that custody not be granted to either parent but to this agency * * *.[21]

Approximately one year after this report had been furnished to the judge, the trial was held.

At the conclusion of the parties' evidence, the trial judge, in his oral decision, made the following references to the welfare report:

> Some suggestion was made that I ought to disregard the welfare report which was made in this case on November 15th of 1965. I don't feel that way. I asked that the welfare report be made, investigation and report, and the fact I asked that that report and investigation be made at the request of the parties as well as on my own. It seems to me that that's one of the things that I should take into consideration here as long as well as everything else that we have heard here. Now it may be that what [appellant's counsel] meant was that report is not up to date. And that, of course, is true; that report was made a year ago, and we

18. Compare Poteet v. Poteet, 45 N.M. 214, 114 P.2d 91, 96 (1941); Chavez v. Chavez, 39 N.M. 480, 50 P.2d 264, 101 A.L.R. 635 (1935). See also Orfield, Divorce for Temperamental Incompatibility, 53 Mich.L.Rev. 659 (1959).

19. The order entered by the court reads in part as follows:
    The State of Alaska, Department of Health and Welfare, is requested to investigate the environment surrounding the infant of the above named parties * * * with the end in view of determining how custody or possession of said child shall be determined, and to make recommendations to the above court.

20. This report consisted of a letter addressed to the trial judge over the signature of Edith Skinner, child welfare worker.

21. Approximately one year later in connection with a motion to dismiss appellee's complaint, appellant, by affidavit, stated that the author of this report "made no attempt to discuss the situation with" appellant.

have not had a subsequent report. * * * If what he meant was that I shouldn't consider the matter because it was a welfare report and we haven't had the witnesses here testifying. I think he's clearly wrong and I don't intend to follow that.

Appellant argues that the report had not been made part of any hearing, had not been offered into evidence by either party, and the author of the report had not been available for cross-examination. Appellant also asserts, "There is absolutely no question that the decision of this Court was based entirely and completely and was in full accord with the recommendation of a child welfare worker that neither party had an opportunity to cross-examine."

We find no merit in appellant's last contention. The trial judge clearly stated that the report was only one of the factors which he considered. The evidence appearing in the 'record, exclusive of the questioned report, furnished an adequate factual basis for the custodial aspects of the lower court's findings and decree.

As to the last issue, mention should be made of appellant's argument that she was denied a fair trial because the report was used as evidence by the trial court without affording her the right to cross-examine its author.[22] There are decisions in which the trial court's use of an independent welfare report without provision for its formal admission and the cross-examination of its author has been held erroneous.[23] On the other hand, there is precedent upholding

the propriety of the court's consideration of the welfare report on the ground that the objecting party had, earlier in the action, acquiesced in its procurement.[24] Pertinent here is the decision of the Supreme Court of Oregon in Rea v. Rea,[25] where it was said that:

> The better-reasoned modern cases tend to support the view that when an independent investigation is made by the court * * * such action * * * being acquiesced in by the parties, the consideration by the court of such investigation will not constitute reversible error even though the report is not incorporated in the record.
>
> *     *     *     *     *     *
>
> In the case at bar, the court accorded a full hearing to the parties in open court. Witnesses pro and con testified before the independent investigation was proposed or made. There is nothing to indicate that the actual decision was delegated to the investigator.

We have already alluded to our conclusion that there was substantial evidence aside from the report to sustain the court's decree, and that the trial judge, in our view, was not unduly swayed by the contents of this report. Additionally, the record before us shows that appellant unequivocally acquiesced in the court's order which requested the Department of Health and Welfare to furnish a report. We also note that the contents of the report were never withheld from appellant.[26] In such circumstances, we find no error.

The decree entered below is affirmed.

22. See generally Annot., 35 A.L.R.2d 629, 631–32 (1954).

23. Roberts v. Roberts, 216 Ark. 453, 226 S.W.2d 579 (1950); Martinez v. Martinez, 49 N.M. 405, 165 P.2d 125 (1946); Moon v. Moon, 62 Cal.App.2d 185, 144 P.2d 596 (1944); Fewel v. Fewel, 23 Cal.2d 431, 144 P.2d 592 (1943). Several of the cases involved the additional objectionable elements of lack of a request from the parties for the report and secrecy surrounding the report's contents.

24. Luman v. Luman, 231 S.W.2d 555 (Tex. Civ.App.1958); Biles v. Biles, 107 Cal. App.2d 200, 236 P.2d 621 (1951); Zachary v. Zachary, 155 Or. 346, 63 P.2d 1080 (1937).

25. 195 Or. 252, 245 P.2d 884, 895, 896, 35 A.L.R.2d 612 (1952).

26. The record shows that appellant read the text of the report in November of 1965.