ELTON H., Appellant,

v.

NAOMI R., Appellee.

No. S–11531.

Supreme Court of Alaska.

Aug. 26, 2005.

James J. Davis, Jr. and Marguerite Humm, Alaska Legal Services Corporation, Anchorage, for Appellant.

No appearance for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Elton H.[1] is the father of two minor children, Julian and Carmen. He appeals a custody order granting legal custody to Naomi R., the mother of the children, and temporary shared physical custody to Elton and Naomi's mother, Arletta M. Because the order did not grant *de facto* legal custody to Arletta, and the superior court did not abuse its discretion by awarding legal custody to Naomi, we affirm the order in regard to legal custody. But because the superior court awarded shared physical custody to Arletta over Elton's objections without making the necessary findings pursuant to *Evans v. McTaggart*,[2] we reverse the order in regard to physical custody and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Background

Elton and Naomi are the biological parents of Julian H., born in 1991, and Carmen H.,

---

**1.** Pseudonyms have been used throughout this opinion to protect the identity of the parties and members of their families.

**2.** 88 P.3d 1078 (Alaska 2004).

born in 1995. The couple were together from 1989 until 1998 without marrying. Their relationship was tumultuous. Elton suffered from untreated schizophrenia and depression until 1995, along with a drug and alcohol problem. He walked out on the family several times and physically abused Naomi.

From 1998 until 2000, Elton and Naomi shared custody of Julian and Carmen in Anchorage pursuant to an informal arrangement. Following her separation from Elton, Naomi became romantically involved with a man named Lance V. In October 2000, Naomi briefly moved with Carmen and Lance to Puerto Rico before settling in Orlando, where she remains. In 2001 Naomi had the first of her two children by Lance. Lance has also physically abused Naomi. The couple parted in 2002 but continue to co-parent their two children.

Elton remained in Anchorage with Julian. Arletta M., Naomi's mother, lives in Anchorage with her own young children. Since 2000, Arletta has taken a very active role in helping Elton raise Julian. During the summer of 2002, Naomi sent Carmen to live in Anchorage with Arletta and Elton. Carmen lived primarily with Arletta while Julian resided primarily with Elton. Naomi maintained close contact with her children, though she was able to make only a single visit, from Christmas 2002 to February 2003, between the summer of 2002 and the custody trial in the summer of 2004.

Elton is currently taking anti-psychotic and anti-depressant medication. His health care providers have described his mental illness as stable and mild. One is of the opinion that "he is functionally stable" and is "able to do the usual things that the rest of us in society do." He has no current substance abuse problems. He has been unemployed since July 2003. He estimates that his income is close to $700 per month. He derives this income from Supplemental Security Income, Social Security and Adult Public Assistance. He does not have a checking account or any savings. He currently resides in a subsidized two-bedroom apartment. He believes that he would be eligible for a subsidized three-bedroom apartment if he is awarded full custody of Julian and Carmen.

At the time of trial, Naomi was unemployed and was in the process of being evicted from her apartment in Florida.

The impetus for this action originated from a dispute between Elton and Arletta over custody of the children. Julian enrolled in summer school in 2003. Because Arletta lived nearby the school, Elton asked if Julian could live with her during the term. She agreed. On the last day of summer school, Elton informed Arletta that he was coming to pick up his children. Arletta refused to allow him to take the children. Elton eventually filed suit to gain custody and for damages for interference with parental rights.

## B. Proceedings

Elton filed suit on November 21, 2003 against Naomi and Arletta. He requested primary custody of Julian and Carmen and asked for compensatory and punitive damages from Arletta for intentionally interfering with his parental rights. Prior to trial Arletta, who in her joint answer with Naomi had sought custody of the children, was dismissed as a defendant.

Trial was held June 7–8, 2004 before Superior Court Judge John Suddock. Elton was represented by Alaska Legal Services and Naomi represented herself *pro se*. Judge Suddock issued oral findings on June 14, 2004 and written findings and conclusions of law two days later.

## C. The Superior Court's Findings of Fact

Initial custody determinations in non-divorce disputes are governed by AS 25.20.060.[3] When faced with a custody dispute pursuant to AS 25.20.060, a superior court shall award custody based on the best interests of the children according to the nine factors described in AS 25.24.150(c). At the time the superior court considered this case, these factors were:[4]

3. *Smith v. Weekley*, 73 P.3d 1219, 1225 (Alaska 2003).

4. Effective on July 1, 2004, the legislature revised AS 25.24.150(c)(6). *See* ch. 111, § 5, SLA 2004. The language currently in effect reads:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.[5]

Pursuant to AS 25.20.060, the superior court applied these factors to determine the best interests of Julian and Carmen. The court entered findings on each of these factors, placing the most emphasis on the ability of each parent to care for the children and the children's need for stability.

### 1. Physical, emotional, mental, religious, and social needs

The superior court concluded that the children especially need stability, a reprieve from violence, and a cessation of inter-parent strife: "Both children need stability, both children need parents they can rely on to meet their needs and support for [Julian's] academic situation, Special Ed. They need to be away from violence, away from conflict between the parents or between either of the parents and the grandmother."

### 2. The capability and desire of the parents to care for their children

While the superior court believed that both parents love their children and desire to care for them, it concluded that neither is presently able to care for them. Naomi is currently unemployed, without housing, and lacking in emotional stability. Elton is also unemployed but his other shortcomings are less tractable. According to the superior court, Elton has a pattern of abandoning his responsibilities and his family, exhibiting marginal judgment, and suffering from serious mental illness that requires treatment occupying the majority of his mental and emotional resources. The superior court believed that Naomi will be capable of caring for Julian and Carmen once "she gets back on her feet." For Elton, on the other hand, "there are structural limits on what he can do taking care of these two children as a primary care giver."

### 3. Preferences of the children

The superior court concluded that Julian and Carmen were not sufficiently mature to form a preference for either parent.[6] At the urging of the custody investigator, however, the superior court noted that "the children are decidedly in favor of being parented by the mother in Florida." Carmen, in particular, is afraid of being parented by Elton.

---

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability, if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

The legislature also added subsections (g) through (k), which make it much more difficult for a perpetrator of domestic violence to obtain any custody or unsupervised visitation of his or her children. See ch. 111, § 5, SLA 2004. Be-

cause the superior court issued its findings of fact and conclusions of law on June 16, 2004, the court correctly relied on the earlier version of the law.

**5.** Former AS 25.24.150(c) (2003).

**6.** Julian was twelve and Carmen eight at the time of the trial. The superior court noted that Julian is not mature for his age. See Fardig v. Fardig, 56 P.3d 9, 13 n. 13 (Alaska 2002) ("Whether a child is of sufficient age to have a meaningful preference for one parent or the other is a question committed to the discretion of the trial court.").

#### 4. Love and affection existing between each child and the parent

In its written findings, the superior court found "love between both parents and the children." In its oral findings, the superior court noted that Carmen stated that she does not really know her father.

#### 5. The length of time child has lived in particular setting and the desirability of continuity

The superior court found that Arletta has been the strongest source of stability and continuity in the children's lives: "[I]f [Arletta] weren't here, this situation could not possibly have worked even as well as it has for the past four years." The children also have extended family in the Anchorage area and have formed close attachments to Arletta's two young children.

#### 6. Desire and ability of parent to allow an open and loving relationship between children and other parent

The superior court found "that each parent is equal in this regard."

#### 7. Evidence of domestic violence, child abuse or neglect

While the court found that "there is no evidence of present or recent domestic violence by [Elton]" in its findings of fact, it noted in its oral findings that Elton beat Naomi in the past and "doesn't understand that [in] this society, domestic violence is unacceptable."

The superior court found "no domestic violence issues with respect to [Naomi]." It noted, however, that Lance, Naomi's former boyfriend and the father of her other children, was arrested last year for domestic violence against Naomi.

The court determined that there is no evidence of child abuse by either parent.

#### 8. Substance abuse issues

The court found no current substance abuse by either parent. In its oral findings, the court noted that Elton "apparently had a cocaine and alcohol problem sometime in the past. It seems to be under acceptable control now."

#### D. The Superior Court's Custody Order

Faced with these difficult facts, the superior court determined that "[this] situation is best met with a rough maintenance of the status quo." At trial, the superior court repeatedly asked Elton if a shared custody arrangement with Arletta could be worked out. In the end, the superior court granted sole legal custody to Naomi but awarded shared physical custody to Arletta and Elton because of Naomi's temporary inability to care for the children. Ultimately, the superior court expected that Naomi would get back on her feet and request physical custody: "If and when [Naomi] obtains a stable job, housing, and the emotional stability needed to support a family of four, she may [move] this Court to prove such factors. If [Naomi] does so, this Court will allow the children to move to Florida to live with her so that she has physical custody of her children."

The order allocated physical custody between Arletta and Elton based on Arletta's work schedule. The children stay with Elton from Monday morning until Thursday morning and during the day on weekends. Though the children spend roughly half of every week with Elton, the order granted Arletta the full financial benefits of physical custody—such as child support, tax benefits, and control of permanent fund dividends.

Elton appeals both the award of legal custody to Naomi and the award dividing physical custody between himself and Arletta. Naomi and Arletta have not participated in this appeal.

### III. STANDARD OF REVIEW

■ "Whether the court applied the correct standard in a custody determination is a question of law we review *de novo*, determining the rule of law in light of precedent, reason, and policy."[7]

■ A trial court "is given broad discretion in custody awards so long as the best interests of the child are served."[8] A supe-

---

**7.** *Moeller–Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001).

**8.** *Carter v. Novotny*, 779 P.2d 1195, 1198 (Alaska 1989).

rior court's decision in child custody matters will not be reversed unless there has been an abuse of discretion or the controlling factual findings are clearly erroneous.[9] "An abuse of discretion is established where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[10] A factual finding is clearly erroneous when a review of the record leaves this court with the definite impression that a mistake has been made.[11]

## IV. DISCUSSION

### A. The Custody Award Violates *Evans v. McTaggart.*

We have long recognized that a parent is entitled to a custodial preference over non-parents in custody determinations. This preference can only be overridden if the parent is unfit or the welfare of the child requires that the child be placed in the custody of a non-parent.[12] In *Evans v. McTaggart,*[13] we held that clear and convincing evidence is necessary to override the parental preference.[14] We also specified that a trial court must articulate the standard of proof used to override the parental preference.[15] Because Elton's implied contention that the order grants *de facto* legal custody

to Arletta is without merit, we affirm the order granting legal custody to Naomi. But because the superior court awarded shared physical custody to Arletta, a non-parent, without entering any findings pursuant to *Evans,* we reverse the order in regard to physical custody and remand for further proceedings.

### 1. The superior court granted sole legal custody to Naomi.

Elton argues that the award of sole legal custody to Naomi was "a legal fiction" and that the superior court "actually awarded [Arletta] ... custody of both [Julian] and [Carmen]." Elton claims that the court invested Arletta with all of the rights and incidents of child custody, even though Naomi was named the nominal legal custodian. We read this as an argument that the superior court granted legal custody, as well as physical custody, to Arletta. Consequently, Elton claims that the superior court violated *Evans* because it failed to make the factual findings necessary for awarding custody to a non-parent over the objections of a parent. Though we have some misgivings regarding Naomi's practical ability to exercise legal custody over her children from Orlando,[16] we accept the superior court's statement that it awarded "sole legal custody" to Naomi.

---

**9.** *Fardig,* 56 P.3d at 11; *see also Vachon v. Pugliese,* 931 P.2d 371, 375 (Alaska 1996) (applying abuse of discretion and clear error standards of review to custody dispute between parents who never married or formalized custody arrangement).

**10.** *Fardig,* 56 P.3d at 11 (quoting *Siekawitch v. Siekawitch,* 956 P.2d 447, 449 (Alaska 1998)).

**11.** *Id.*

**12.** *See J.W. v. R.J.,* 951 P.2d 1206, 1210–11 (Alaska 1998) (parental preference applies to custody dispute between natural father and stepfather); *Carter,* 779 P.2d at 1197 (recognizing application of parental preference to custody dispute between father and maternal aunt); *Hickey v. Bell,* 391 P.2d 447, 448 (Alaska 1964) (holding that parent is entitled to custodial preference over grandparent seeking custody).

**13.** 88 P.3d 1078 (Alaska 2004). In regard to the standard of proof necessary to override the parental preference, *Evans* overruled a line of cases—including *Britt v. Britt,* 567 P.2d 308 (Alaska 1977), *Buness v. Gillen,* 781 P.2d 985

(Alaska 1989), *J.W. v. R.J.,* 951 P.2d 1206 (Alaska 1998), and *Todd v. Todd,* 989 P.2d 141 (Alaska 1999)—which held that, in order to overcome the parental preference, a non-parent must show by a preponderance of the evidence that the substantive standard had been met. *Id.* at 1083–84. *Evans* also held that "clear evidence" and "clearly" shown standards of proof employed in another line of parental preference cases—including *Hickey,* 391 P.2d 447, *Turner v. Pannick,* 540 P.2d 1051 (Alaska 1975), *Carter,* 779 P.2d 1195, and *C.R.B. v. C.C.,* 959 P.2d 375 (Alaska 1998)— were consistent with the clear and convincing evidence standard, which is the customary articulation for the heightened standard of proof between preponderance of the evidence and proof beyond a reasonable doubt. *Id.* at 1083–85. *Evans* did not overrule either line of cases in regard to the substantive law governing a custody dispute between a parent and a non-parent.

**14.** *Id.* at 1085.

**15.** *Id.* at 1087.

**16.** *See infra* note 33 and accompanying text.

The essential feature of legal custody is the discretion to make major decisions regarding a child's upbringing.[17] These decisions include choices regarding education, health care, morals, and religion.[18] Elton argues that the court awarded full custody to Arletta because (1) the custody order prohibited Naomi from assuming physical custody for at least one school year, (2) Naomi may elect to leave the children in the current arrangement until their majority, and (3) the court awarded Arletta the financial benefits that accompany "primary physical custody." We are not convinced that these features of the custody award demonstrate that Arletta possesses full custody, that is, legal as well as physical custody, because they did not invest Arletta with discretion to make major decisions.

Requiring the children to remain in Anchorage with Arletta and Elton for one school year does not transfer decision-making authority from Naomi to Arletta. This aspect of the custody order restricts Naomi's discretion but it does not grant Arletta any authority. The possibility that the current arrangement could last indefinitely also does not affect Naomi's authority. Even if Arletta physically cares for Julian and Carmen until their majority, Naomi still retains the right to make the major decisions affecting their lives. The superior court's boarding school analogy aptly captures the dynamic of these circumstances. Like a parent who has placed her child in boarding school, it becomes more difficult for Naomi to ensure that her preferences regarding her children's education, discipline, morality, and religious instruction are carried out. This difficulty, however, does not deprive her of the right to make such decisions.

We also note that Elton's first two arguments are unpersuasive in light of the fact that he shares physical custody. Under the custody award, Elton cares for the children from Monday morning until Thursday morning and during the day on weekends. The requirement that the children remain in Anchorage for one school year and the possibility that the current arrangement could last indefinitely actually increase Elton's ability to affect the children's health, education and welfare.

Elton's final contention, that Arletta's receipt of the financial benefits of custody shows that Arletta possesses full custody, is likewise unpersuasive. Child support is meant to benefit the child by financially assisting the party providing child care.[19] Likewise, tax breaks are meant to offset actual child care costs. These financial benefits are appropriately granted to the person who the custody order contemplates will provide child care. Consequently, assigning these benefits to Arletta does not imply that she holds legal as well as physical custody; it only reflects that she bears the financial burdens of physical custody.[20] On the other hand, control of the children's permanent fund dividends may fall within the authority that corresponds to legal custody. Even so, in this case the ability to control permanent fund dividends is a relatively small intrusion on Naomi's ultimate discretion.

## 2. Awarding shared physical custody to a non-parent over the objections of a parent requires *Evans* findings.

While we are not persuaded that the superior court granted *de facto* legal custody to Arletta, the court did grant shared physical custody to Arletta. As discussed above, a parent is entitled to a preference over a non-parent in custody determinations. Because the parental preference applies to awards of physical custody as well as legal custody,[21]

---

17. *See Bell v. Bell,* 794 P.2d 97, 99 (Alaska 1990) (noting that shared legal custody means that parents share responsibility for making major decisions affecting child's welfare); *see also* 3 ARNOLD H. RUTKIN, FAMILY LAW AND PRACTICE § 32.08[2] (2004).

18. RUTKIN, *supra* note 16, § 32.08[2].

19. *See Bennett v. Bennett,* 6 P.3d 724, 727–28 (Alaska 2000).

20. It is troubling that Arletta receives all of the financial benefits of physical custody even though the superior court awarded shared custody with Elton. Since Elton cares for the children for roughly half of every week, it is anomalous that he does not receive an equitable portion of the financial benefits of child care. On remand, the superior court should address this discrepancy.

21. *See J.W. v. R.J.,* 951 P.2d 1206 (Alaska 1998); *Bass v. Bass,* 437 P.2d 324 (Alaska 1968).

and the superior court did not make the factual findings that *Evans* requires before overriding the parental preference, we must reverse the order regarding physical custody and remand for further proceedings.

### a. The parental preference applies to awards of physical custody.

We have previously applied the parental preference to determinations of physical custody—even where there is little dispute regarding legal custody. In *J.W. v. R.J.*,[22] a superior court granted a father and a stepfather shared legal custody but awarded primary physical custody to the stepfather.[23] We reversed the custody award because the superior court had not found that the father was unfit to parent or that the child's welfare required primary physical custody to be awarded to the stepfather, and remanded for further proceedings to address these issues.[24]

In *Bass v. Bass*,[25] a superior court awarded shared legal custody to a child's parents but granted temporary physical custody to the child's paternal grandparents in light of the mother's current inability to care for their child.[26] We upheld this decision because ample evidence in the record supported the superior court's conclusion that the mother was unfit, and, therefore, it was appropriate to override the parental preference.[27]

### b. The superior court did not make findings sufficient to override Elton's parental preference pursuant to *Evans.*

In *Evans v. McTaggart*, we clarified what standard of proof is needed to overcome the parental preference: "a non-parent must show by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent."[28] The superior court did not make any *Evans* findings in this case. Neither the court's written or oral findings concluded by clear and convincing evidence that Elton is unfit or that the welfare of the children requires them to be in Arletta's custody. Without such findings, a court cannot award physical custody to a non-parent over the objections of a parent seeking custody.

### 3. On remand, the superior court should determine if clear and convincing evidence exists to support overriding the parental preference only if Naomi is currently unable to care for her children.

The shared physical custody arrangement between Elton and Arletta was intended to be temporary. On remand, the superior court should first address whether the conditions of Naomi's life in Florida have improved so that she may assume physical custody. The superior court need not address whether clear and convincing evidence exists to override Elton's parental preference unless Naomi remains unable to care for Julian and Carmen.[29]

If Naomi is not currently able to care for Julian and Carmen, the superior court should determine whether clear and convincing evidence exists indicating that Elton is unfit to assume sole physical custody. A finding of clear and convincing evidence that Elton is not fit to be the sole care-giver for his children, if supported by the record, would permit an award splitting physical custody between Elton and Naomi.[30]

---

22. 951 P.2d at 1206.

23. *Id.* at 1208.

24. *Id.* at 1210–11.

25. 437 P.2d 324.

26. *Id.* at 324–26.

27. *Id.* at 325–27.

28. *Evans*, 88 P.3d at 1085.

29. Alternatively, if upon remand Elton shows a "significant or substantial" change in circum-

stances, the court may reconsider the award of legal custody. *Chesser–Witmer v. Chesser*, 117 P.3d 711, 717 (Alaska 2005).

30. In its findings of fact, the superior court stated that Elton is "able to parent, desperately wants to parent his children, and should have the chance to do so *to the extent that he is able."* (Emphasis added.) This language implies that the superior court found that Elton was incapable of assuming full-time custody. But such a finding, if it is to be made, must be made explicitly and under the correct standard of proof.

■ If clear and convincing evidence does not exist that Elton is unfit to be the children's sole care-giver, the superior court should examine whether clear and convincing evidence demonstrates that the welfare of the children requires them to remain, at least part of the time, in Arletta's custody. In making this determination, the court should remain cognizant that this finding requires more than the conclusion that the best interests of the children would be served by remaining with Arletta.[31] The court must determine that it "would be detrimental to the child[ren] to permit" Elton "to have custody." [32]

### B. The Superior Court Did Not Abuse Its Discretion in Awarding Legal Custody to Naomi.

■ Elton maintains that the superior court abused its discretion by awarding legal custody to Naomi. We disagree. The problem facing the superior court fundamentally required a comparison between Naomi and Elton. Given the evidence presented at trial and the court's findings, we cannot conclude that the superior court abused its discretion

by selecting to grant legal custody to Naomi.[33]

Elton advances two reasons why the superior court abused its discretion by awarding legal custody to Naomi rather than Elton. First, Elton contends that it was an abuse of discretion to award legal custody to Naomi because the superior court had found her "unable to meet the children's needs because she is jobless, effectively homeless and her job skill-set is marginal." Second, Elton argues that "no evidence" was proffered at trial showing that he was not able to care for his children.[34] Neither argument is persuasive.

### 1. Even though Naomi was currently unable to care for her children, it was not an abuse of discretion to grant her legal custody.

Granting legal custody to a parent who is not currently able to care for the child is not a *per se* abuse of discretion. On several occasions, we have upheld awards of legal custody or joint legal custody to parents considered presently unable to care for their children.[35] This position is conceptually coherent because of the different requirements

---

**31.** A parent cannot be deprived of custody based solely on the best interests of the child. *Turner v. Pannick*, 540 P.2d 1051, 1054–55 & n. 4 (Alaska 1975).

**32.** *Id.* at 1054. In deciding *Turner*, we were guided by the California Supreme Court's decision in *In re B.G.*, 11 Cal.3d 679, 114 Cal.Rptr. 444, 523 P.2d 244 (1974). *B.G.* held that if a parent was fit, custody could only be vested in a non-parent if such an award was necessary to avert harm to the children. *Id.* at 258. Our cases considering harm to the children include: *Kinnard v. Kinnard*, 43 P.3d 150, 154–55 (Alaska 2002) (awarding custody to non-parent justified because removing child from psychological parent would be emotionally devastating); *Todd v. Todd*, 989 P.2d 141 (Alaska 1999) (placement of child with mother instead of grandparents would have been "clearly detrimental to the welfare of the child" largely because child had lived seventy percent of life with grandparents and was primarily bonded to them); *Buness v. Gillen*, 781 P.2d 985, 989 (Alaska 1989) (issue of material fact existed regarding whether emotional bond between child and non-parent required custody to remain with non-parent); *B.J. v. J.D.*, 950 P.2d 113, 117–18 (Alaska 1997) (child's welfare required her to remain with non-parent because mother could not provide stable home or meet child's needs).

**33.** We note, however, that awarding legal custody to a parent dwelling over 4,000 miles and four

time zones from her children approaches the limits of discretion and can only be justified under special circumstances. Such circumstances exist here: The children's separation from Naomi is expected to be temporary, and Elton's judgment is marginal at best.

**34.** Elton also claims that the superior court ignored a number of factors relevant under AS 25.24.150(c)—including Naomi's continued involvement with Lance, and her alleged abandonment of her children. The record is clear, however, that the superior court addressed these issues. The court was cognizant of Lance and his history of abuse but found that there were no current domestic violence issues with Naomi. The superior court also found that Naomi had not abandoned her children. Elton does not contend that these findings were clearly erroneous.

**35.** In *Bass v. Bass*, 437 P.2d 324, 326–27 (Alaska 1968), we approved a custody order that awarded shared legal custody to a child's natural parents but granted physical custody to the grandparents because of the parents' present inability to care for the child. In *Carter v. Novotny*, 779 P.2d 1195, 1197–98 (Alaska 1989), we upheld a custody order granting shared legal custody to the father and the child's maternal aunt and physical custody to the aunt. The aunt appealed the order claiming that it was improper to award shared legal custody to a father whom the superi-

of legal and physical custody. A parent who temporarily lacks the financial or personal resources to physically care for her child may still be the best person to make major decisions regarding how the child is raised in the long term.[36] Trial judges are well situated to determine if awarding legal custody to a parent facing temporary economic or personal hardships serves the best interests of a child.

Awarding legal custody to Naomi in this particular case was not an abuse of discretion. Elton appears to argue that the superior court did not properly ascertain his fitness to parent, maintaining that once it concluded that Naomi was presently unable to meet the children's needs, it should have awarded him custody. However, the superior court considered at length the comparative parenting abilities of Naomi and Elton. The superior court noted that "in terms of the capability and desire of each of these parents to meet the children's needs, they're both in kind of tough shape at the moment." Nonetheless, the superior court concluded that Naomi's present inability to parent resulted from temporary problems with work and housing, while Elton's inability was permanent.

> **2. There was substantial evidence in the record supporting the superior court's conclusion that Elton should not have legal custody.**

Contrary to Elton's assertions on appeal, the superior court reviewed ample evidence of Elton's shortcomings as a parent. The superior court found particularly relevant Elton's history of abandoning his responsibilities, his marginal judgment, his unemployment, and the fact that dealing with his own personal problems would make it difficult for him to be a primary caregiver to the children. Elton's brother Ralph testified that Elton "has always been a man that seems to run away from everything. I mean, con-

stant. That has been his role; run away, run away, run away." Denise Hudson, the custody investigator in this case, testified that Julian and Carmen told her that there was no food in Elton's house, that they were left unattended during visitation, and that Elton often spent all day sleeping. By Elton's own account, he has been unemployed since July 2003 and lives on $700 a month in public assistance.

Based on these facts, we cannot conclude that the superior court abused its discretion by awarding sole legal custody to Naomi.

> **C. Awarding Shared Physical Custody to a Non–Party Is Not an Abuse of Discretion.**

■ Elton argues that it was improper to award shared physical custody to Arletta because she was not a party to the litigation. Though we have already reversed the order regarding physical custody, we address the propriety of granting custody to a non-party because (a) Elton has briefed the issue and (b) if the superior court finds on remand that *Evans* has been satisfied, the issue will be fully ripe for decision.

Arletta, who had sought custody in her answer to Elton's complaint, was dismissed as a defendant by stipulation at the beginning of trial. Nonetheless, the superior court awarded her shared physical custody of Julian and Carmen after she consented to the arrangement. In the past, this court has upheld custody orders in which a parent was awarded legal custody and physical custody was granted to the child's grandparents or other family members who had intervened in the custody action.[37] Whether a superior court may award physical custody of a child to a non-party grandparent is an issue of first impression for this court.

We first note that relevant Alaska Statutes do not address the propriety of non-party custody awards.[38] We have long recognized

---

or court had explicitly found to be unfit. *Id.* We rejected the aunt's claim. *Id.* at 1198–99. *See also C.R.B. v. C.C.,* 959 P.2d 375, 381 n. 12 (Alaska 1998) (expressing approval for practice of "vesting custody temporarily in a nonparent until a parent can get his or her life sufficiently together to resume custody").

**36.** *See, e.g., Bass,* 437 P.2d at 327 & n. 13–14.

**37.** *See, e.g., Bass,* 437 P.2d at 326–27.

**38.** For example, AS 25.20.060 mandates that trial courts "shall award custody on the basis of the best interests of the child" but does not specify that only a party to the action may receive custody.

that trial courts have broad discretion to fashion appropriate child custody orders.[39] This discretion is dictated by statute [40] and the complex, fact-intensive nature of custody disputes. As a general matter, we do not wish to preclude trial courts from fashioning custody awards that will better serve the interests of children by establishing overly broad prohibitions.[41] We hold that it is within the discretion of a trial court to grant custody to a person who was not a party at the initiation of the litigation as long as four conditions are met.

First, the non-party must consent to entry of the custody order and to becoming a party to the litigation. Elton argues that granting custody to non-parties is inappropriate because a "court may not adjudicate the rights of a person or entity that is not a party to the action before it." [42] As Elton points out, courts in other jurisdictions have reversed awards to non-parties because the courts in question could not bind the non-parties by the custody order.[43] We agree that a court lacks the power to require a non-party to assume custody of a child. However, we are not persuaded that this general rule should prevent courts from awarding custody to a non-party when the non-party consents to the arrangement. In this case, Arletta consented in court to the shared custody arrangement. If, upon remand, the court determines that custody should be placed with Arletta, she must consent to becoming a party to the case.

Second, the award must comply with *Evans*.[44] It is not within the unfettered discretion of a trial court to override the parental preference. A court may grant custody to a non-parent only if the parents agree to the arrangement, or if clear and convincing evidence shows that one or both of the parents are unfit, or that the welfare of the child requires custody to be with the particular non-party non-parent.

Third, a court may award custody only to a non-party who would have been entitled by right to intervene as a party in the custody proceedings pursuant to Alaska Civil Rule 24(a). We have previously allowed psychological parents [45] and grandparents [46] to intervene as parties in custody disputes. Limiting possible non-parties to those individuals who have standing to intervene as a matter of right accomplishes two important goals. First, it eliminates any temptation to award a child of disadvantaged background to an individual or institution unknown to the child based on the non-party's resources and capacity to care for the child.[47] Second, because parents will almost certainly know all possible intervenors, parents will be in a better position to oppose or agree to a non-party award.

Lastly, non-party awards must comply with due process. Awarding custody to a non-party may implicate due process concerns when a party lacks notice that such an award is being considered. In *Anonymous v. Anonymous*,[48] the Alabama Supreme

**39.** *Carter,* 779 P.2d at 1198–99.

**40.** *See* AS 25.20.060 ("court shall award custody on the basis of the best interests of the child ... consider[ing] all relevant factors ..."); AS 25.24.150(c) (listing nine factors to be considered in making best interests finding).

**41.** *See Nail v. Clavier,* 745 So.2d 1221, 1223–24 (La.App.1999) (stating that allowing court to award custody to non-party upon appropriate proof that parent was unfit was "sound rule which allows the trial court the necessary flexibility to do what is necessary in the best interest of the child.") (internal quotation omitted).

**42.** *Alaska Marine Pilots v. Hendsch,* 950 P.2d 98, 112 (Alaska 1997).

**43.** *E.g., T.S. v. M.C.S.,* 747 A.2d 159, 163–64 (D.C.2000); *Bonne v. Bonne,* 8 N.C.App. 524, 174 S.E.2d 833, 835 (1970).

**44.** *See supra* Part IV.A.

**45.** We have held that "those relationships that affect the child which are based upon psychological rather than biological parentage may be important enough to protect through custody and visitation, to ensure that the child's best interests are being served." *Buness v. Gillen,* 781 P.2d 985, 987–88 (Alaska 1989). For when a non-parent can be considered a "psychological parent," *see Kinnard v. Kinnard,* 43 P.3d 150, 153–54 (Alaska 2002).

**46.** *See Todd v. Todd,* 989 P.2d 141, 142 (Alaska 1999).

**47.** This temptation should be extinguished by the parental preference. However, this requirement emphasizes that a best interests analysis cannot be substituted for the test under *Evans.*

**48.** 353 So.2d 515 (Ala.1977).

Court reversed an award granting custody to a child's paternal grandparents, who were not parties to the case, because the mother had not received adequate notice or an opportunity to be heard on the issue of whether the grandparents should obtain custody.[49] The court reasoned that the process followed by the trial court deprived the mother of due process.[50] Alabama's experience is instructive. Consequently, we hold that a party to a custody dispute must receive fair notice of the possibility that custody could be awarded to a particular non-party. Fair notice must include a reasonable opportunity to marshal evidence and present arguments against a particular non-party obtaining custody.

If the superior court considers awarding some amount of physical custody to Arletta, Elton deserves an opportunity to develop and present evidence against such an award. Prior to trial, Elton had some notice that a custody award to Arletta was a possibility. Arletta and Naomi submitted a joint answer to his complaint, asking that Arletta "be awarded the care, custody and control of the minor children." Arletta appears to have dropped this claim, however, during a March 3, 2004 hearing before the superior court. Additionally, since Arletta was dismissed as a party at the beginning of the trial, Elton had no reason to present evidence against Arletta. Elton, therefore, did not have sufficient notice at the time of trial that Arletta might obtain custody and was not able to develop and present evidence against such an award. Consequently, if the superior court contemplates awarding physical custody to Arletta on remand, it must hold an evidentiary hearing to allow Elton to voice his objections.

In sum, a trial court has discretion to grant custody to a non-party if (1) the non-party consents, (2) the award complies with the requirements in *Evans* for overriding the parental preference, (3) the non-party could have intervened in the custody dispute, and (4) the parties to the custody dispute have sufficient notice of the possibility that a non-party will receive custody to satisfy due process.

## V. CONCLUSION

Because the superior court did not award *de facto* legal custody to Arletta, a non-parent, in violation of *Evans*, and because the court did not abuse its discretion in awarding legal custody to Naomi, we AFFIRM the superior court's order awarding legal custody. But because the court awarded physical custody to a non-parent over the objections of a parent, and failed to make findings by clear and convincing evidence either that the parent was unfit or that the welfare of the children required the children to remain with the non-parent, the order awarding shared physical custody violated *Evans*. Consequently, we REVERSE the order concerning physical custody and REMAND the matter to the superior court for further proceedings consistent with this opinion.